Emilio C. **MANIO**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 90–86.

United States Court of Veterans Appeals.

Submitted Oct. 23, 1990.

Decided Feb. 15, 1991.

Emilio C. Manio, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Carolyn F.

Washington, Washington, D.C., were on the brief, for appellee.

Before KRAMER, FARLEY and MANKIN, Associate Judges.

MANKIN, Associate Judge:

Appellant, Emilio C. Manio, has repeatedly sought disability compensation for pyorrhea and resulting tooth loss. The denial of appellant's claim for service connection was initially upheld by the Board of Veterans' Appeals (BVA) in a January 27, 1988, decision. Following his submission of new evidence, appellant's claim was reopened but the denial of service connection was again affirmed in a November 14, 1988, decision by the BVA. Subsequently, appellant submitted the medical opinion of Dr. Dela Pena as a new evidentiary basis upon which to reopen his claim. The BVA, in a November 20, 1989, decision, once again upheld the denial of service connection and this appeal followed. Jurisdiction of the Court is based upon 38 U.S.C. § 4052 (1988).

We first briefly review the factual background of appellant's claim. The Court then considers the defense of laches raised by the Secretary and concludes that laches is not a defense to the veteran's claim for service-connected disability compensation. The Court then discusses the regulations which allow compensation for dental disabilities. Next, the Court discusses title 38 United States Code sections 3008 and 4004(b) (1988) and sets out the two-step analysis to be employed when a veteran seeks to reopen a claim previously denied by the BVA on the basis of "new and material evidence". Finally, the Court remands the veteran's claim to the BVA for the limited purpose of considering the veteran's claim in light of all the evidence presented by appellant in the present and prior appeals.

## THE FACTUAL BACKGROUND

Appellant served with a recognized guerilla unit in the Philippines from June 11, 1945, to October 22, 1945; he then began service with the Army of the Commonwealth of the Philippines. Veterans of both these groups are entitled to compensation for service-connected disabilities. *See* 38 U.S.C. §§ 107(a), 310 (1988). When discharged from his service on December 26, 1945, appellant was apparently missing fourteen teeth, with three more non-restorable. R. at 2. Appellant claims that his tooth loss occurred in the course of his service during the summer and fall of 1945.

Appellant's discharge examination on December 28, 1945, showed that he had "pyorrhea, chronic ... carious teeth...." R. at 2. Appellant contends that pyorrhea developed in service and was the cause of his tooth loss. Br. at 3–4. Pyorrhea was not detected at the time of appellant's examination for induction into the Army of the Commonwealth of the Philippines on October 23, 1945. R. at 3. (The report of appellant's examination for induction into the Army of the Commonwealth of the Philippines is erroneously designated in the Record on Appeal as part of the veteran's discharge examination; the discharge examination is clearly dated "28 Dec. '45" while the induction examination is dated "23 Oct 45". R. at 2–3.) The BVA dismissed this evidence in appellant's initial appeal: "no indication was given that pyorrhea or a pyorrhetic condition, was the underlying reason that any of the veteran's teeth were missing." *Emilio C. Manio*, loc. no. 802573, at 3 (BVA Jan. 27, 1988).

■ Contained within appellant's discharge examination is a notation to the effect that appellant's condition was not incurred in the line of duty. The BVA has considered appellant's claim on three separate occasions and has never mentioned this notation. R. at 16, 31, 46. An injury or disease incurred during active service is considered to have occurred in the line of duty unless: (1) it was the result of the service member's willful misconduct; or (2) was incurred while the service member was either (a) confined by court sentence, or (b) avoiding service. At the time of the veteran's service these provisions had been enacted into law, *see* Act of Sept. 27, 1944, Pub.L. No. 78–439, ch. 426, 58 Stat. 752 (1944), essentially the same provisions are today found at 38 U.S.C. § 105 (1988), and

are also found at 38 C.F.R. §§ 3.1(m), (n), and 3.301 (1990). Aside from the absence of any record indicating any of these disqualifications, the nature of appellant's disease also argues strongly against the applicability of any of these disqualifications.

Prior to his second appeal to the BVA, appellant submitted the sworn statements of three of his fellow veterans as new evidence. Two of the affiants were veterans who stated that they served with appellant. R. at 20. They averred that during October 1945 appellant was frequently heard to complain about his teeth and gums. They also corroborated appellant's contention that many of his teeth were removed by the Dental Surgeon, Lieutenant Salvador. The sworn statement of Lieutenant Salvador was also submitted by appellant. Lieutenant Salvador stated:

> That sometime in October 1945 after a rigid examination to the extent of my available facilities and having determined that Mr. Manio, then a Private, needed the extraction of his upper left and right central, lateral, and cuspid teeth due to pyorrhea, these teeth were thus extracted by me at my mobile clinic at Barrio Cansinala, Apalit, Pampanga.

R. at 21.

The BVA was unpersuaded by this evidence, noting that one of the teeth which Lieutenant Salvador claimed to have removed was indicated by appellant's discharge examination to be present and in good condition. *Emilio C. Manio*, loc. no. 833536, at 4 (BVA Nov. 14, 1988). Appellant sought to explain this discrepancy by stating that his teeth were removed over a period of time. R. at 36. Comparison of appellant's October and December dental charts suggests that this dental extraction occurred prior to appellant's October induction into the Army of the Commonwealth. However, the dental charts are not accurate enough to say that with any confidence. If the charts are to be believed, appellant lost five teeth after the October examination but grew back six other teeth. Finally, in his third appeal to the BVA, appellant offered the sworn statement of dentist Dr. Dela Pena. His expert testimony that pyorrhea was the cause of appellant's tooth loss corroborated the testimony of Lieutenant Salvador—albeit over forty years after the fact.

## LACHES

The Secretary contends that the veteran's claim is barred by the equitable doctrine of laches. Before addressing the merits of appellant's claim, we first examine this novel defense.

■ As a threshold matter we are presented with the issue of whether or not this Court, a court of law created under Article I, has jurisdiction to apply equitable defenses such as laches. A review of cases from other Article I courts show a general acceptance of such defenses. In *Woods v. Commissioner*, 92 T.C. 776, 784–89 (1989), the Tax Court concluded that equitable doctrines could properly be asserted in cases over which an Article I court had jurisdiction but that care must be taken to ensure that such doctrines not be used to extend the court's statutory grant of jurisdiction. We are persuaded by the discussion in *Woods* and hold that we may consider the application of equitable defenses.

■ The doctrine of laches, which is rooted in public policy concerns that stale claims not be the subject of litigation, has two elements: (1) inexcusable delay on the part of the claimant, and (2) prejudice resulting therefrom to the detriment of defendant. *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed.Cir.1986). "Failure to act promptly will operate as a bar to recovery *where the delay results in injury* [or] *prejudice* to the adverse party." *Deering v. United States*, 620 F.2d 242, 244, 223 Ct.Cl. 342 (1980) (en banc) (emphasis added) (quoting *Brundage v. United States*, 504 F.2d 1382, 1384, 205 Ct.Cl. 502 (1974)). The applicability of laches is a matter left to the discretion of the Court. *See Czaplicki v. The S.S. Hoegh Silvercloud*, 351 U.S. 525, 534, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956); *see also Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1551 (Fed.Cir.1988), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988).

■ There is no statute of limitations on the claiming of service-connected disability benefits. Even when there is no statute of limitation for initiating a cause of action, courts will often bar stale claims under the doctrine of laches. *See, e.g., Stevens v. Tennessee Valley Auth.*, 712 F.2d 1047, 1056 (6th Cir.1983) (Veterans Preference Act claim against TVA governed by laches since Congress had specified no statute of limitations in the most analogous federal cause of action). However, the fundamental reasons for the creation and the continued existence of the Department of Veterans Affairs (VA), as well as its policies and procedures, counsel against the application of the equitable defense of laches to claims submitted by or on behalf of veterans.

■ A party seeking to invoke laches must show that it has been prejudiced by the claimant's delay in bringing his claim. *See Deering,* 620 F.2d at 245–46. The Secretary contends here that "excessive delay has prejudiced [the Government's] ability to mount a defense" (Br. at 15), but that argument rings hollow because the Secretary does not defend claims. *See* 38 C.F.R. § 3.103(a) (1990). Rather than defending against the claims of veterans, the Secretary has a statutory duty to assist claimants during the course of the *ex parte* and non-adversarial claims resolution process at the regional office and before the BVA. *See* 38 U.S.C. § 3007(a) (1988). Moreover, "[i]t is the obligation of VA ... to render a decision which grants [the veteran] every benefit that can be supported in law while protecting the interests of the Government." 38 C.F.R. § 3.103(a). The legislative history of the Act which created this Court, the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, indicates that VA is to adjudicate claims in a manner sympathetic to veterans.

Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits. This is particularly true of service-connected disability compensation where the element of cause and effect has been totally by-passed in favor of a simple temporal relationship between the incurrence of the disability and the period of active duty.

I[m]plicit in such a beneficial system has been an evolution of a completely ex-parte system of adjudication in which Congress expects VA to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits. Even then, VA is expected to resolve all issues by giving the claimant the benefit of any reasonable doubt. *In such a beneficial structure there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof.*

H.R.Rep. No. 963, 100th Cong., 2d Sess. 13, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5782, 5795 (emphasis added).

■ The VJRA also militates against the application of the equitable defense of laches to veterans' claims. Our jurisdiction is confined to the review of decisions issued by the BVA. 38 U.S.C. § 4052(a) (1988). As a court of review, our task is to review BVA decisions based upon the record before the BVA, not to consider for the first time defenses, contentions, or arguments which were not raised before the Board. *See Branham v. Derwinski,* 1 Vet.App. 93, 94 (1990). The Secretary may not raise a defense of laches on appeal where the issue was not before the BVA below. Our jurisdiction is further limited to only those cases in which the claimant has filed a Notice of Appeal within 120 days after the date of mailing of the BVA decision. 38 U.S.C. § 4066(a) (1988). In view of this strict statutory provision, there can be no basis for the application of the doctrine of laches to this appeal. Appeals are either timely filed or they are not.

In many instances disabilities incurred in service to this country may not become disabling until years later. The debt this nation owes to its disabled veterans lasts for a lifetime and should not be limited to those veterans who are prompt in asserting their right to compensation. It is hard to imagine that the equitable defense of laches can have any place in the judicial review

of veterans' claims for disability benefits, but we are not required to address the issue definitively under the circumstances of this case.

## COMPENSATION FOR DENTAL DISABILITIES

The BVA in its decisions is bound by the regulations of VA. 38 U.S.C. § 4004(c) (1988); *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990). "Pyorrhea shown during service after a reasonable period of service, involving one or more teeth necessitating extraction, is a sufficient basis for grant of service connection for the tooth or teeth involved." 38 C.F.R. § 3.382(c) (1990); *see also* 38 C.F.R. § 3.381(b) (1990) (pyorrhea present before service can form basis for service-connected disability). Lieutenant Salvador testified that appellant's teeth were removed in October 1945, approximately four months after appellant began service; we believe that four months clearly satisfies the "reasonable period of service" requirement.

Section 3.382(c) also contains a possible disqualification of appellant's claim which is quoted but not discussed by either the BVA or appellee. The regulation requires confirmation of a diagnosis of pyorrhea "by a Department of Veterans Affairs examination, including X-ray [sic], before grant of service connection, *unless examination is contraindicated* by factors such as extraction bf all pyorrhectic [sic] teeth." (Emphasis added). Apparently no x ray examination was performed to confirm the diagnosis of pyorrhea at the time of appellant's discharge. On remand, the BVA should determine whether, in light of the principles relating to service connection which require VA "to administer the law under a broad and liberal interpretation consistent with the facts in each individual case" (38 C.F.R. § 3.303(a) (1990)), the x ray requirement was "contraindicated" under the terms of § 3.382(c).

## NEW AND MATERIAL EVIDENCE

Under 38 U.S.C. § 4004(b), once the BVA has considered and upheld the denial of a claim for benefits, the BVA cannot subsequently reopen and allow that claim. The exception to this rule is 38 U.S.C. § 3008:

If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Administrator shall reopen the claim and review the former disposition of the claim.

Therefore, the BVA must perform a two-step analysis when a veteran seeks to reopen a claim based upon new evidence.

First, the BVA must determine whether the evidence is "new and material". 38 U.S.C. § 3008. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old. *Cf. Reinhart v. Schweiker*, 590 F.Supp. 78, 80 (W.D.Mich.1984) (where a social security disability claim is reopened, it is proper for district court to review entire claim made in second application even though all or part of claim may have been brought in the original application for benefits). A contrary rule would inevitably lead to absurd results. A veteran who was clearly entitled to disability benefits could be denied those benefits solely because he presented his evidence in the course of two proceedings rather than one. Furthermore, the statutory requirement that the former disposition be reviewed can only be fulfilled if all the evidence is considered. VA regulations appear to recognize this need by stating that "[d]eterminations as to service connection will be based on review of the entire evidence of record...." 38 C.F.R. § 3.303(a). The new evidence may not be sufficient in and of itself, but it may be just enough, when all of the evidence is considered, to create an "approximate balance of positive and negative evidence" which would entitle the veteran to the "benefit of the doubt". 38 U.S.C. § 3007(b) (1988).

The relevant legislative history confirms that Congress intended § 3008 to allow for reevaluation of evidence from previously denied claims.

By these changes, the committee intends to create a more certain basis for the reopening of claims that have been considered and disallowed by the Board. Moreover, under these changes ... an

attorney entering a case following a disallowance by the Board would not always be restricted, in appealing to court, to relying on the administrative record in existence when the attorney entered the case. Rather, by virtue of these proposed changes an attorney would have an opportunity to attempt *to ensure that the administrative decision is made on the basis of all appropriate evidence* and arguments, by seeking either a mandatory reopening for new and material evidence or a discretionary reopening for good cause shown.

S.Rep. No. 418, 100th Cong., 2d Sess. 34 (1988) (emphasis added). The ability to seek a reopening for good cause shown was dropped in the compromise reached with the House of Representatives. 134 Cong.Rec. S16, 650, *reprinted in* 1988 Code Cong. & Admin.News 5834, 5840–41.

The VA regulation dealing with this framework, 38 C.F.R. § 19.194 (1990), promulgated prior to adoption of 38 U.S.C. § 3008, provides:

When a claimant requests that a claim be reopened after an appellate decision and submits evidence in support thereof, a determination as to whether such evidence is new and material must be made and, if it is, whether it provides a new factual basis for allowing the claim. An adverse determination as to either question is appealable.

While it is possible to read this regulation as requiring that the new evidence *by itself* must provide the new factual basis, such a reading would, in our view, be inconsistent with the statutory framework created by 38 U.S.C. §§ 4004(b) and 3008.

■ If the BVA refuses to reopen and reconsider a claim because it determines that the offered evidence is not "new and material", that determination (but only that determination) would be subject to review on appeal to this Court. If we find this determination "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 38 U.S.C. § 4061(a)(3)(A) (1988), a remand would be required. By contrast, if the BVA determines that evidence is "new and material",

reopens and reconsiders the claim, and once again denies the claim, that decision is subject to review on appeal by this Court based upon the entire record because the decision of the BVA was required to be based upon all evidence and material of record.

■ As an alternative to seeking to reopen a previously denied claim on the basis of new and material evidence, a veteran might seek to have his previously denied claim revised or reconsidered. *See* C.F.R. § 3.105(a) (1990); *see also Bentley v. Derwinski,* 1 Vet.App. 28 (1990), *appeal docketed,* 91–7020 (Fed.Cir. Dec. 6, 1990); 38 C.F.R. § 19.185 (1990).

■ We now apply the two-step analysis required by §§ 4004(b) and 3008 to the case at hand. The BVA found, as its sole finding of fact in the most recent appeal, that "the evidence submitted subsequent to [the November 1988] decision [of the BVA] is not sufficient to alter the factual basis to show that pyorrhea resulted in any extraction of any tooth or teeth during the veteran's recognized military service." *Emilio C. Manio,* loc. no. 931256, at 4 (BVA Nov. 20, 1989). The BVA decision appears to have addressed the merits of appellant's claim. The BVA stated that the issue was "whether the evidence submitted *in connection with the reopened claim* establishes a new factual basis which would warrant the grant of service connection." *Id.* (emphasis added). We conclude from this that the BVA found that the evidence offered by appellant to reopen his claim was new and material; we do not read the Secretary's brief as arguing to the contrary.

Examination of the November 20, 1989, BVA decision reveals that the BVA erroneously failed to consider the evidence submitted by appellant in the course of prior appeals. The BVA stated "the evidence reported in the prior Board decision will be briefly *discussed for clarification purposes only.*" *Emilio C. Manio,* loc. no. 931256, at 2 (BVA Nov. 20, 1989) (emphasis added). As we have stated, this would not be proper; once appellant's claim was re-

opened based upon new and material evidence, the BVA was obligated to consider all relevant evidence offered by appellant. Because of this error the BVA's decision must be set aside.

## CONCLUSION

Although the veteran has presented compelling evidence, we believe that the BVA should have the first opportunity to consider his claim in light of all the evidence. *See Spencer v. Derwinski,* 1 Vet.App. 125, 127 (1991). Therefore, it is ordered that the BVA decision denying service connection is set aside pursuant to 38 U.S.C. § 4061(a)(3) because it was not based upon the complete record, as required by 38 U.S.C. §§ 3008 and 4004(b). The case is remanded to the BVA for further proceedings consistent with this opinion. The BVA is to consider appellant's claim in light of all the evidence and the application of the benefit of the doubt doctrine, 38 U.S.C. § 3007(b), to the issues presented.

Remanded.