**Robert W. LOOK, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–476.**

United States Court of Veterans Appeals.

Submitted March 22, 1991.

Decided Feb. 6, 1992.

As Amended April 8, 1992.

Arnold Van Etten, Dubuque, Iowa, was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, D.C., were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

MANKIN, Associate Judge, filed the opinion of the Court, in which IVERS, Associate Judge, joined. NEBEKER, Chief Judge, concurring in part, filed a separate opinion.

MANKIN, Associate Judge:

Appellant, Robert W. Look, has filed several claims with the Veterans' Administration (now the Department of Veterans Affairs) (VA) since 1962 for disability benefits for the residuals of surgery for a herniated intervertebral disc. Appellant contends that he sustained neurological damage as a result of surgery conducted at the VA Medical Center in Madison, Wisconsin on April 27, 1960. R. at 34. Specifically, appellant contends that he suffers from left foot weakness and left foot drop (an extended position of the foot caused by paralysis of the flexor muscles of the leg). The veteran appeals from the February 14, 1990, Board of Veterans' Appeals (BVA or Board) decision, which denied entitlement to service-connected disability pursuant to 38 U.S.C. § 1151 (formerly § 351) and 38 C.F.R. § 3.358(c)(3). Because the BVA decision is based on an invalidated regulation and contains reversible error of both fact and law, we reverse the BVA decision and remand the case to the BVA with specific instructions to proceed in a manner consistent with this opinion.

## I. FACTUAL BACKGROUND

Robert W. Look served in the Army for eight months during World War II. R. at 13. His induction physical examination revealed no defects and indicated that he was physically and mentally qualified for general military service. R. at 8–11. A physical examination of June 18, 1943, conducted before appellant was honorably discharged revealed that his "Right knee and ankle jerks brisker than on left. No Clonus. Gait shows a slightly widened base and is a little asynergic. Neurological examination otherwise negative." R. at 15. No foot drop was noted during or immediately after service.

On March 7, 1960, appellant was admitted to the hospital for "pain and numbness in the left leg." Upon examination and X rays, it was determined that appellant had "an extrusion of lumbosacral disc and that a laminectomy was indicated to correct this." R. at 32. On April 26, 1960, the VA Regional Office (VARO) rating board denied service connection for psychoneurosis mixed type and rupture of nucleus pulposis with nerve root compression L–4, L–5. R. at 44. On April 27, 1960, he was "taken to surgery and a laminectomy was performed with removal of a small piece of disc, L–5 S–1 on the left." R. at 34, 36. On the very same day the surgery was performed the "Record of all Pertinent Complications" noted that "[t]here is some numbness in the left foot with accompanying foot-drop. Very weak in the legs.... There appears to be Nerve Cell damage. Has extreme pain in back and legs." R. at 37, 39. Dr. J.K. Curtis examined appellant on June 16, 1960, and noted "Ankle jerks zero. Walks with left foot drop.... Cannot walk on left heel.... The nerve root could be removed only with considerable effort. It is my opinion in doing so, there was nerve cell damage done in the central nervous system." R. at 31. Dr. J.T. Mendenhall approved Dr. Curtis' diagnosis of "Damage to central nervous system during surgery." R. at 31. On June 23, 1960, Dr. H.E. Groth noted that even after "the course of physiotherapy the patients [sic] foot-drop ... was unchanged. Patient has extreme pain at times." R. at 41. On June 27, 1960, Dr. Groth also noted that appellant "could not get on the heel of his left foot due to inability to dorsiflex the foot to that extent." R. at 34.

After applying for compensation and pension benefits, on October 24, 1962, appellant was re-examined by VA physicians. R. at 56–64. One physician's diagnosis was "Herniated intervertebral disc L5 S1, operated residuals of mild foot drop and weakness in foot." R. at 59. A November 27, 1962, rating decision granted appellant a 70% combined rating for non-service-connected disabilities: 50% anxiety reaction, competent and 40% for herniated intervertebral disc L–5 S–1, operated, residuals of with mild foot drop and weakness, left foot. R. at 65.

Appellant was examined on March 26, 1963, and December 8, 1965, with the same diagnosis of "Herniated intervertebral disc, L–5 S–1 residual weakness left foot and ankle." R. at 70, 75. On December 20, 1965, the VARO maintained the previous rating decision, but denied appellant's claim of service connection for a nervous condition and arthritis. R. at 81. The BVA in a May 9, 1967, decision affirmed the denial of entitlement to service connection for arthritis and a nervous disability as no new factual basis was established by appellant. R. at 87.

On July 6, 1973, the VARO affirmed the previous rating decision and denied service connection for hypertrophic arthritis and polyneuritis and found "no evidence of carelessness, accident, negligence, lack of proper skill, error in judgment or similar instances of indicated fault in the surgery for veteran's back exists on the part of the Veterans [sic] Administration." R. at 88. On December 12, 1973, the BVA denied entitlement to service connection for anxiety reaction and to disability compensation for postoperative residuals of a herniated intervertebral disc. R. at 94. On October 6, 1975, the BVA found no obvious error in the 1967 BVA decision denying service connection for arthritis, therefore, the veteran's claim was denied. R. at 99.

On August 15, 1977, the VARO refused to reopen the veteran's claim, finding that no new factual basis had been established. R. at 107. On August 30, 1978, the VARO affirmed the prior rating decisions maintaining the combined 70% non-service-connected disability rating established since 1962. R. at 108. On June 1, 1979, the BVA denied benefits for service connection for arthritis of the spine and entitlement to disability benefits for postoperative residuals of herniated disc pursuant to provisions of 38 U.S.C. § 1151 (formerly § 351). R. at 116.

On November 29, 1988, the VARO increased his non-service-connected pension combined rating to 100% as a result of carcinoma of the bladder found earlier that year. The board also awarded appellant a special monthly compensation "on account of carcinoma of the bladder and additional disabilities of anxiety reaction and herniated intervertebral disc, independently ratable at 60% or more from 1–15–88 [the date of the bladder surgery]." R. at 176. No service connection was found for the spinal injury due to the operation performed in 1960. R. at 177.

In 1989, appellant submitted letters from Dr. Douglas A. Schmid, Dr. Eugene F. Herzberger, and Dr. S. Chi stating that his current condition, including the left foot drop, was caused by complications of the laminectomy performed in 1960 at the VA Medical Center in Madison, Wisconsin. R. at 179, 180, 181. While the VARO reopened appellant's claim on February 21, 1989, it denied service connection under 38 U.S.C. § 1151 on February 24, 1989. R. at 182. The VARO confirmed its rating decision on June 5, 1989. R. at 184. A timely appeal to the BVA followed. On February 14, 1990, the BVA denied entitlement to disability benefits for residuals of herniated disc pursuant to 38 U.S.C. § 1151. *Robert W. Look*, BVA No. 90–04499, at 7 (Feb. 14, 1990). From that BVA decision, the veteran presents his appeal to this Court.

## II. ANALYSIS

### A.

■ The issue in this case is whether the BVA erred in determining that appellant was not entitled to disability benefits for residuals of a herniated disc pursuant to 38 U.S.C. § 1151 (formerly § 351). Section 1151 of title 38 states in pertinent part:

Where any veteran shall have suffered an injury or an aggravation of an injury as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation ... not the result of the veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation ... shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

This statute controls the disposition of this case. This Court has recently held that,

> [t]he statute imposes only two limitations on the granting of service-connected benefits; first, as long as the injury or aggravation occurs 'as a result of' exposure in one of four circumstances and, second, is not a 'result of such veteran's willful misconduct,' benefits will be made available.... This language reveals that Congress considered the issue of fault while drafting the statute and suggests that, although fault of the veteran is relevant to a determination of eligibility for compensation, the fault of the VA personnel is not.

*Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991). The statute does not require fault, and therefore, 38 C.F.R. § 3.358(c)(3) was held "unlawful as exceeding the authority of the Secretary and in violation of the statutory rights granted to veterans by Congress under section 1151." *Id.* at 6.

The BVA decision relies on its finding that the "evidence does not otherwise show that there was accident, negligence, or other fault on the part of the VA in connection with the surgery in 1960." *Look*, BVA No. 90–04499, at 6. Clearly, this determination is based upon the invalidated language of 38 C.F.R. § 3.358(c)(3). Because the BVA decision was premised on a regulation that has been held invalid, normally its decision would be vacated and the case remanded for readjudication under the proper statutory standard. Here, however, readjudication is not necessary as discussed below in section C of the Court's opinion.

#### B.

■ When a veteran attempts to reopen a previously denied claim based upon new evidence, "the BVA must perform a two-step analysis." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991).

> First, the BVA must determine whether the evidence is 'new and material'. 38 U.S.C. [§ 5108 (formerly § 3008)]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the

veteran's claim in light of *all* the evidence, both new and old.

*Id.* The claimant bears the initial burden of presenting "new and material" evidence under 38 U.S.C. § 5108. The first prong of the *Manio* analysis appears to have been satisfied, since the BVA proceeded to review the merits of appellant's "reopened claim". *See Look*, BVA 90–04499, at 5.

■ In such a case, as presented here, where "the BVA determines that evidence is 'new and material', reopens and reconsiders the claim, and once again denies the claim, that decision is subject to review on appeal by this Court based upon the entire record because the decision of the BVA was required to be based upon all evidence and material of record." *Manio*, 1 Vet. App. at 146. The 1990 BVA decision focused on "whether the *evidence received* is new and material and of such weight as to establish a new factual basis in support of an allowance of benefits...." *Look*, BVA No. 90–04499, at 5 (emphasis added). While the VARO found the recent evidence new and material when it reopened appellant's claim, the BVA concluded "that the *additional evidence received subsequent to the Board's prior decisions* does not establish entitlement to the benefits claimed." *Id.* at 6 (emphasis added). Just as in the *Manio* case, the February 14, 1990, BVA decision "reveals that the BVA erroneously failed to consider the evidence submitted by appellant in the course of prior appeals.... the BVA was obligated to consider all relevant evidence offered by appellant. Because of this error the BVA's decision must be set aside." *Manio*, 1 Vet. App. at 146–47. The BVA decision was not based on the complete record as required by 38 U.S.C. §§ 5108 and 7104(b) (formerly §§ 3008 and 4004). This case, however, unlike *Manio*, warrants a reversal and remand for further proceedings for the reasons discussed below.

#### C.

**1. Clearly Erroneous Fact Finding**

When reviewing factual determinations made by the BVA, the Court's scope of review is governed by 38 U.S.C.

§ 7261(a)(4) (formerly § 4061), which states that:

> (a) In any action brought under this chapter, the Court of Veterans Appeals, to the extent necessary to its decision and when presented, shall—
>
> .        .        .        .        .
>
> (4) in the case of a finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such finding if the finding is clearly erroneous.

■ A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Brannon v. Derwinski,* 1 Vet.App. 314, 317 (1991); *Spencer v. Derwinski,* 1 Vet.App. 125, 126–27 (1991); *Gilbert v. Derwinski,* 1 Vet. App. 49, 52–53 (1990).

> If the [factfinder]'s account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Gilbert,* 1 Vet.App. at 52 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)). The Court must now determine, under the standard announced by the Supreme Court and in *Gilbert,* whether the BVA's factual findings are clearly erroneous.

■ In his reopened claim, the veteran presented medical opinions from three different physicians, who all agreed that the veteran's left foot drop is directly related to the damaged nerve root caused by the laminectomy and disc removal performed in 1960. With a reference to "unexpected complications", Dr. Schmid stated after reviewing all of the medical records, "I think the evidence does point to his disability being related to his surgery in 1960. This is corroborated with a recent neurological evaluation, including electromyography and nerve conduction velocities." R. at 179. Dr. Chi concluded that the nerve root damage "was [an] *unexpected complication* from [the] previous surgery, but the current symptoms are still from the previous laminectomy and dysc [sic] removal." R. at 181 (emphasis added). The most compelling evidence is from Dr. Eugene E. Herzberger, who after reviewing all of the medical records came to the conclusion that:

> All these records document the fact that you have developed a left foot drop following your lumbar disc surgery of 1960. This foot drop could be considered as an *untoward event* following lumbar disc surgery because it usually does not occur and it is only in very rare instances where it happens due to specific difficulties which the surgeon may encounter during the surgery.

R. at 180 (emphasis added). Despite the overwhelming evidence submitted and no evidence to the contrary, the BVA concluded that "the additional evidence received subsequent to the Board's prior decisions does not establish entitlement to the benefits claimed." *Look,* BVA 90–04499, at 6.

Before appellant submitted the new and material evidence, the Board and the rating boards before it continually ignored and disregarded the following reports to deny service-connected disability under 38 U.S.C. § 1151: (1) the April 27, 1960, medical report noting "numbness in the left foot with accompanying foot-drop.... There appears to be Nerve Cell Damage." R. at 37, 39; (2) the June 16, 1960, examination by two physicians noting, "[w]alks with left foot drop.... The nerve root could be removed only with considerable effort. It is my opinion in doing so, there was nerve cell damage done in the central nervous system.... Damage to central nervous system during surgery." R. at 31; (3) the October 24, 1962, examination concluding "Herniated intervertebral disc L5 S1, operated residuals of- mild foot drop and weak-

ness in foot." R. at 59; (4) the March 26, 1963, and December 8, 1965, examinations confirming residuals of the surgery as "weakness left foot and ankle." R. at 70, 75; (5) a statement by a doctor who examined him in February 1960 stating that "[h]e definitely didn't have a limp or foot drop ... at this time. He did however have these ailments ever since surgery...." R. at 82. The Board, and the rating boards before it, have effectively denied the very existence of these reports by concluding, as the 1979 BVA decision did, that "entitlement to disability benefits for post operative residuals of herniated disc pursuant to provisions of 38 United States Code [1151] is not established." R. at 116. After reviewing the newly submitted evidence together with the previous medical records as required by *Manio,* the BVA's factual determination is definitely clearly erroneous.

█ The Court is left with the "definite and firm conviction that a mistake has been committed." *United States Gypsum Co.,* 333 U.S. at 395, 68 S.Ct. at 542. Where, as here, "a plausible basis is lacking, this Court will set aside factual findings as clearly erroneous." *Brannon,* 1 Vet.App. at 317. The only conclusion that can be drawn from the record is that appellant's left foot drop was the direct result of the laminectomy performed in VA Medical Center in Madison, Wisconsin on April 27, 1960.

### 2. Clear and Unmistakable Error

█ In this appeal, appellant argues that the rating board and the BVA failed to apply the correct statutory and regulatory provisions to the facts of his case and requests that the Court overturn the 1990 BVA decision under 38 U.S.C. § 7261(a)(3)(A) as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Br. of Appellant at 4–5. "Clear and unmistakable error is an administrative failure to apply the correct statutory and regulatory provisions to the correct and relevant facts." *Oppenheimer v. Derwinski,* 1 Vet.App. 370, 372 (1991). *See Thompson v. Derwinski,* 1 Vet.App.

251, 253 (1991) (discussing 38 C.F.R. § 3.105 (1990); *accord* 38 C.F.R. § 2.1009(a) (1947)). Here, in his reopened claim, the veteran has raised a "question that the rating board and the BVA had before them the relevant and correct facts." *Cf. Thompson,* 1 Vet.App. at 253.

Claims under 38 U.S.C. § 1151 "shall be awarded in the same manner as if such disability, aggravation, or death were service-connected." It has consistently been the Secretary's position that the left foot drop existed prior to the 1960 surgery. The VA relies on a medical report that states that the veteran had a left slapping gait with weak dorsiflexion of the left foot, yet there is no medical diagnosis of left foot drop at any time prior to April 27, 1960, anywhere in the record. In reviewing the entire record before us, the Secretary has not presented an iota of evidence that appellant's left foot drop existed prior to the surgery. Yet even if the left foot drop was a preexisting condition, the VA at no time ever considered that the condition was unquestionably aggravated by the 1960 surgery, and thus would be compensable under 38 U.S.C. § 1151. For this reason, the BVA in its February 14, 1990, decision clearly erred in rejecting appellant's argument that clear and unmistakable error had been committed.

Neither the 1990 BVA decision, nor any of the other BVA decisions, nor any of the rating decisions as far back as 1973 ever applied section 1151 properly. Even when appellant first applied for residuals of the surgery, the VA failed to consider section 1151 at all, but awarded appellant benefits for a non-service-connected pension in its November 27, 1962, rating decision. In 1962 and thereafter, the VA has failed to apply the correct statutory and regulatory provisions to the correct and relevant facts. *See Thompson,* 1 Vet.App. at 253. The substantive rights of the veteran have been prejudiced by the Government's failure to apply 38 U.S.C. § 1151 properly and thus, this misapplication of the law constitutes clear and unmistakable error committed by the VA in the 1962 rating decision. *See Akins v. Derwinski,* 1 Vet.App. 228, 232 (1991); *Bentley v. Derwinski,* 1 Vet.App.

28, 31 (1990), *appeal dismissed for failure to prosecute*, No. 91–7020 (Fed.Cir. Feb. 22, 1991).

The VARO and the BVA further erred when they incorrectly applied 38 C.F.R. § 3.358(c)(3), which allows compensation to be paid under 38 U.S.C. § 1151 when the injury or aggravation occurs as a result of hospitalization:

> However, compensation is payable in the event of the occurrence of an "accident" (*an unforseen, untoward event*), causing additional disability or death proximately resulting from Department of Veterans Affairs hospitalization or medical or surgical care.

38 C.F.R. § 3.358(c)(3) (emphasis added), *invalidated by Gardner v. Derwinski*, 1 Vet.App. 584 (1991). Regardless of the fact that the evidence before the VARO in 1962, as discussed above, indicated nerve cell damage immediately after appellant's operation, and evidence before the BVA in 1990 contained statements by three doctors to the effect that appellant's left foot drop was "untoward" and "unexpected," neither tribunal correctly applied section 3.358(c)(3) to this evidence.

While 38 C.F.R. § 3.358(c)(3) has been rendered invalid, the regulation, in a similarly worded provision, has been applicable since the time of the 1962 rating decision. The Court has consistently held "that the BVA is not free to ignore its own regulations." *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). Even under a correct application of the law as it previously existed, requiring fault, clear and unmistakable error occurred when the VARO and the BVA ignored the portion of the regulation which would have allowed compensation in the event of an "accident." *Thompson*, 1 Vet. App. at 253. *See Oppenheimer*, 1 Vet. App. at 372.

Having concluded that administrative error was committed in 1962 and thereafter, the 1990 BVA decision must be reversed under 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061) and remanded with instructions. On remand, the Secretary is instructed to amend the 1962 rating decision to award benefits as if service connected under 38 U.S.C. § 1151 and determine the appropriate disability rating for appellant. Where the evidence establishes clear and unmistakable error, as the facts reveal here, a reversal of a prior decision "has the same effect as if the corrected decision had been made on the date of the reversed decision." 38 C.F.R. § 3.105(a). In accordance with the regulation, the corrected rating decision must be given the same effect as if rendered on November 27, 1962. *See Akins*, 1 Vet.App. at 261.

### III. CONCLUSION

The Secretary's motion for summary affirmance is DENIED, and the decision is REVERSED and REMANDED for disposition in accordance with this opinion.

*It is so Ordered.*

NEBEKER, Chief Judge, concurring in part:

I concur in the reversal on the basis of *Gardner v. Derwinski*, 1 Vet.App. 584 (1991), and would remand consistent with that decision.