# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-3243

CATHERINE ROBERSON, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 7, 2008                                    Decided February 4, 2009)

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Thomas E. Sullivan*, with whom *Paul J. Hutter*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Gayle E. Strommen*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

LANCE, *Judge*: The appellant, Catherine Roberson, appeals through counsel a September 21, 2005, decision of the Board of Veterans' Appeals (Board) denying entitlement to dependency and indemnity compensation (DIC) benefits under 38 U.S.C. § 1151 for the cause of death of the veteran, the appellant's late husband Isaac Roberson, Jr. The Board also denied entitlement to accrued benefits based on disability ratings in excess of 10% for the veteran's foot-related disabilities. The parties each filed briefs, the appellant filed a reply brief, and, pursuant to an order by the Court, the parties filed supplemental briefs. The Court heard oral argument in the case. For the reasons that follow, we will affirm the Board decision.

1

## I. BACKGROUND

The veteran served on active duty from February 1956 to February 1959. Record (R.) at 19. He had a heart attack in 1974 and cerebrovascular accidents (CVAs) in 1978 and 1990. After 1990, the veteran regularly received treatment at VA medical facilities, including the Columbus, Ohio, outpatient center and VA hospitals in Chillicothe and Cincinnati, Ohio. The veteran also occasionally visited the emergency room at Riverside Methodist Hospital (Riverside), a private facility in Columbus, Ohio.

The veteran was treated at the outpatient center throughout 1994 and received rehabilitative services in 1994 and 1995. R. at 822-24, 826-92. In March 1995, he was admitted to the Chillicothe VA hospital for respite care. R. at 687. In June 1995, the veteran was seen at Riverside for a possible stroke. A computed tomography (CT) scan performed at that time was negative. R. at 775. Also in June 1995, the veteran visited a VA facility and was given a tentative diagnosis of having an adjustment disorder. R. at 815-16.

Two months later, in August 1995, the veteran was again seen at the Riverside emergency room. R. at 1018. The emergency room physician's note indicates that the veteran's medical history included multiple strokes and a carcinoma of the prostate. R. at 1018. A CT scan showed a possible metastatic area in the posterior fossa. The physician's clinical impression was "rule out prostatic carcinoma with cerebral metastasis." R. at 1019. The discharge summary notes that the CT scan indicated a 5 cm mass in the right cerebellum. R. at 1014. The summary also notes that the veteran had involvement in the liver and had multiple subcutaneous masses. R. at 1014. A CT scan of the chest did not show that the veteran's lung was the primary source of the cancer. R. at 1014. An August 1995 consultation report prepared by Dr. James D. Pritchard indicates that the origin of the veteran's cancer was "most likely" in the lung although other sources could not be ruled out. R. at 1048.

The veteran died in October 1995. R. at 780. The cause of death was reported to be cardiac arrhythmia due to pneumonia caused by metastatic cancer and status post CVA. R. at 780, 786. At the time of his death, the veteran had an appeal pending for compensable ratings for arthritis of his right great toe and left foot. R. at 669-71, 792-94.

In February 1996, the appellant, the veteran's widow, filed a claim for accrued benefits based on her husband's increased-ratings claims that were pending at the time of his death. R. at 796-97. In May 1996, the appellant filed a claim for DIC benefits, asserting that the veteran's death was due to his treatment at the VA medical center. R. at 799-802. Specifically, the appellant contends that VA physicians failed to diagnose the veteran's cancer and that this failure hastened his death. Appellant's Brief (Br.) at 14.

In June 1996, a VA regional office (RO) denied the appellant's DIC claim because the evidence failed to show that the cause of the veteran's death was related to his military service or to a service-connected condition. R. at 804-05. The RO also denied entitlement to accrued benefits based on the veteran's foot disabilities. R. at 804. The appellant disagreed, reiterating her belief that VA failed to diagnose the veteran's cancer in a timely manner. R. at 811. In September 1996, the RO denied the appellant's claim for DIC based on the cause of the veteran's death under section 1151. R. at 913-15. A contemporaneous Statement of the Case (SOC) confirmed the denial of accrued benefits. R. at 919-28. The appellant perfected her appeal to the Board in October 1996. R. at 987-88.

In January 1998, Dr. Pritchard wrote a letter in support of the appellant's claim and attached a copy of his August 1995 consultation report. R. at 1054. Dr. Pritchard opined that, in August 1995, the veteran "already had brain involvement from his tumor, and in addition, the C[]T scan showed extensive involvement in the liver, lymph nodes, and lung. Therefore his disease was advanced at the time of diagnosis." R. at 1054. Dr. Pritchard further stated that the veteran's small-cell carcinoma had likely "advanced very quickly and had not been present for a long period of time," and estimated an "onset of perhaps four to eight months prior to the diagnosis." R. at 1054.

In November 1998, the Board denied DIC benefits based on service connection for the cause of the veteran's death, as well as under section 1151. R. at 1100. The Board also granted entitlement to accrued benefits and assigned 10% disability ratings for the veteran's service-connected right-toe and left-foot disabilities. *Id.* On appeal to the Court, the Board's November 1998 decision was vacated and the matters were remanded for further development, including compliance with the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. R. at 1139-42.

3

In March 2002, the Board requested additional development, including review of the evidence by a VA oncologist. R. at 1204. Two VA physicians, from the Bronx, New York, VA medical center, provided an opinion in July 2003. R. at 1218-21. The physicians stated that the primary site of the veteran's cancer was undetermined and that "possible primary sites for this cancer include head and neck tumors, prostate and bowel." R. at 1220. They placed the onset of the veteran's cancer at four to six months before the August 1995 diagnosis, and noted that "[n]either of the brain metastases was detectable on [a] CT scan of the head [in] June, 1995." *Id.* The physicians also noted that "[t]he second of the two brain metastases was undetectable on CT scan of the head on 8/14/95, two days before it was discovered on 8/16/95." *Id.* According to the physicians, "the multiple scans and x-rays that were performed in 1995 prove that the disorder was first manifested in August, 1995," and "was not present on testing prior to July, 1995." *Id.*

The VA physicians were asked to provide answers to specific questions. These questions included:

> Did VA fail, during a period of VA treatment, to diagnose the disorder which caused the veteran's death, when a physician exercising the degree of skill and care ordinarily required of the medical profession reasonably should have diagnosed the condition and rendered treatment?

R. at 1205. In addition, the physicians were asked to determine, to the extent that VA failed to diagnose the veteran's cancer, whether the veteran suffered additional disability or death as a result of that failure. R. at 1220. In response to these questions, the VA physicians stated:

> There are no symptoms recorded during the episodes of VA treatment suggestive of a medical condition that warranted further investigation. In the absence of a history to suggest a disorder other than the multiple strokes, and in the absence of a change in physical findings to suggest a new or worsening process, further investigative studies were not clinically indicated.

*Id.* Further, the physicians noted:

> It is impossible to say if [the veteran] could have been cured if the disease had been detected earlier. Death from extensive small cell carcinoma with brain involvement usually, but not always, results in death within 10 months. Any individual patient, however, may not follow this statistic. Small cell carcinomas have a median survival with treatment of 10 months.

R. at 1221.

4

The Board issued the decision on appeal in September 2005. R. at 1-17. After weighing the evidence of record, including the July 2003 VA medical opinion, Dr. Pritchard's January 1998 opinion, as well as the appellant's own lay statements, the Board concluded that there was "no evidence of record suggesting that VA treatment, specifically the lack of a diagnosis of the veteran's small cell carcinoma, had the effect of hastening [the veteran's] death." R. at 9. The Board also determined that entitlement to accrued benefits based on higher ratings for the veteran's service-connected foot disabilities was not warranted. R. at 15.

## II. ANALYSIS

The question presented on appeal is whether and how an omission, such as an alleged failure to diagnose a condition, may be compensated under the pre-1997 version of 38 U.S.C. § 1151, which did not require a claimant to demonstrate VA negligence. In this case, it is undisputed that the veteran's small-cell carcinoma was not diagnosed by VA, but rather, was diagnosed by a private physician in August 1995. It is also undisputed that the veteran's cancer caused his death in October 1995. Thus, the only relevant question remaining is whether the veteran's death was caused or hastened by the fact that VA did not diagnose his carcinoma two months earlier. To prevail, therefore, the appellant must establish that VA caused the veteran to suffer an injury, or an aggravation of an injury, and that this injury or aggravation resulted in the veteran's death or the hastening thereof.

The appellant argues that "VA treatment, that is, the non-diagnosis of the veteran's cancer, had the effect of hastening [the veteran's] death." Appellant's Br. at 14. The appellant further alleges that the veteran's metastatic disease was an aggravation that resulted in his death. *Id.* The Secretary contends that the appellant has not demonstrated that VA failed to diagnose the veteran's cancer or that any such failure to diagnose resulted in an additional disability or death. Secretary's Br. at 7.

### A. DIC Claim

#### 1. *Legal Framework*

Veterans who suffer an additional disability or death as the result of VA hospitalization, medical or surgical treatment, vocational rehabilitation, or examinations shall receive disability compensation in the same manner as if such disability or death were service connected. 38 U.S.C.

5

§ 1151 (1996).  Currently, section 1151 provides that an individual seeking to recover based on an alleged failure to diagnose must prove "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault" on the part of VA.  38 U.S.C. § 1151(a)(1)(A) (2008).  This fault requirement applies only to claims filed on or after October 1, 1997, however, because the United States Supreme Court, in *Brown v. Gardner*, 513 U.S. 115 (1994), invalidated VA's regulations interpreting section 1151 to require claimants to demonstrate VA negligence, holding that section 1151, as it then existed, could not be read to include a fault requirement.  In response to *Gardner*, Congress amended the statute to make clear that VA fault is an essential element of a section 1151 claim.  *See* Pub. L. No. 104-204, Title IV, § 422(a), 110 Stat. 2926 (Sept. 26, 1996). The appellant's claim, however, was received prior to October 1, 1997; therefore, the former version of the statute applies to this case.  As applicable here, the statute reads, in relevant part,

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment . . . not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter . . . shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151 (1996).

## 2. *Failure To Diagnose Under Former Section 1151*

Fault notwithstanding, it is well settled that a claimant seeking compensation under the version of section 1151 that is relevant here must demonstrate "a causal connection between the 'injury' or 'aggravation of an injury' and [VA] 'hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation.'"  *Gardner*, 513 U.S. at 119 (quoting 38 U.S.C. § 1151 (1996)); *see Jackson v. Nicholson*, 433 F.3d 822, 825 (Fed. Cir. 2005)[1] (holding that, under

---

[1] Under the pre-1997 version of section 1151 at issue here and in *Jackson*, a claimant is not required to demonstrate that the alleged injury or aggravation of an injury resulted from an overt act by VA.  In *Jackson*, the claimant sought recovery under the pre-1997 version of 38 U.S.C. § 1151 for post-traumatic stress disorder (PTSD) that she allegedly suffered as a result of being attacked by a fellow patient while in a VA hospital.  The claimant argued that the word "hospitalization" in section 1151, when read with the phrase "as a result of," must allow for compensation of an injury that results while a claimant is in a VA hospital, regardless of whether that injury was a direct result of VA action. The United States Court of Appeals for the Federal Circuit (Federal Circuit) agreed, holding that "hospitalization," as used in the pre-1997 version of section 1151, "must mean something more than actions of the VA."  *Jackson*, 433 F.3d at 825.  The Federal Circuit concluded that, although a causal connection is required for compensation under section 1151, "hospitalization" is not limited to actions by VA personnel.  *Id.*  The claimant's PTSD therefore resulted from VA

the pre-1997 version of section 1151, a claimant must demonstrate a causal connection between VA hospitalization and the injury or the aggravation of an injury); 38 C.F.R. § 3.358(c) (1996). Moreover, compensation is not available for the continuance or natural progress of diseases for which VA treatment was authorized. 38 C.F.R. § 3.358(b)(2). Thus, the ultimate question is whether VA could be said to have caused or hastened the veteran's death by failing to stop the natural progression of his cancer if that failure to diagnose was not negligent. Although causation is an indispensable element of any section 1151 claim, the determination of whether or how an omission, such as a failure to diagnose, caused a particular claimant additional disability is not as clear. Courts have recognized the difficulty in assessing the element of causation in cases involving an omission, such as a failure to diagnose, versus those based on a commission, or an affirmative act, that leads to clearly identifiable injuries, especially in cases involving cancer. *See Arvayo v. United States,* 766 F.2d 1416, 1419-21 (10th Cir. 1985) (noting the difficulty in identifying the cause of an injury in a case involving a failure to diagnose); *Wilson v. United States*, No. CIV 05-384-JHP, 2006 U.S. Dist. LEXIS 34310, at *14-15 (E.D. Okla. May 26, 2006) (stating that causation is particularly difficult to ascertain in cases based on an alleged failure to diagnose cancer, because "cancer is organic, and is not literally 'caused' by mistreatment or medical negligence"). The Board has previously struggled with the inherent difficulty of assessing section 1151 claims that are based on an alleged failure to diagnose. In 2001, the VA General Counsel issued an opinion, in response to a Board request, discussing the element of causation required in a DIC claim, as set forth in the then extant implementing regulations, and how a causal link may be proved in a failure to diagnose claim under section 1151. *See* VA Gen. Couns. Prec. 05-01 (Feb. 5, 2001) (hereinafter G.C. Prec. 05-01); *see* 38 C.F.R. § 3.358(c). As noted above, the Court ordered supplemental briefing on the relevance of this General Counsel opinion to the present case. Although the Court reviews legal issues de novo, it recognizes that opinions of the General Counsel "constitute a body of experience and informed judgment." *Osman v. Peake*, 22 Vet.App. 252, 256 (2008). Ultimately, the Court accords weight to these opinions based "upon their thoroughness, reasoning, and consistency with earlier and

---

hospitalization, notwithstanding the fact that VA personnel did not perpetrate the underlying attack.

later pronouncements on the specific issue." *Id.*; *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Noting that compensation is not available under section 1151 for the natural progression of a disease, the General Counsel opinion begins by questioning whether this rule presents an absolute bar to DIC benefits for claims based on omissions. G.C. Prec. 05-01 at p. 5; *see* 38 C.F.R. § 3.358(b) & (c). After reviewing various common law principles, legislative histories, and relevant case law, the opinion concluded that "it would be anomalous if section 1151 were construed to exclude coverage for a disability which . . . [is] consistently and historically recognized as resulting from medical treatment." *Id.* at p. 10. In recommending that such claims be recognized based on whether a given physician exercised an ordinary level of skill and care, the opinion proceeds to analyze the apparent disharmony of this negligence-based standard with the holding in *Gardner*. The opinion concludes that *Gardner*, in prohibiting VA from requiring a claimant to demonstrate VA fault in addition to causation, may be differentiated from an omission claim because the latter requires a showing of fault "as a necessary element of causation, rather than a separate and additional element." G.C. Prec. 05-01 at p. 11. The Court finds this logic persuasive, as the alternative would necessarily lead to the absurd result of VA insuring any and all possible infirmities not diagnosed during VA treatment. For example, a claimant being treated at a VA facility for a knee condition may seek to recover under section 1151 should VA's orthopedic surgeon fail to diagnose his liver disease. Such a result cannot be said to be reasonably contemplated by the statute.

Simply put, to prevail under the former version of section 1151, a claimant need only demonstrate that the veteran (1) was injured, or had an injury aggravated, as the result of VA hospitalization, medical or surgical treatment and (2) that the injury or aggravation caused additional disability or death. In a failure to diagnose claim under section 1151, the "injury, or an aggravation of an injury," must necessarily be the failure to diagnose the condition. *See Brown v. District of Columbia*, 853 A.2d 733, 739 (D.C. 2004) (holding that the injury in a failure to diagnose case is the "worsening or deterioration of the plaintiff's condition that results from the physician's failure to diagnose the patient's medical condition"); *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983) ("the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient") (emphasis in original); *Wilson*, 2006 U.S. Dist. LEXIS 34310, at *13

8

(discussing the plaintiff's injury as the failure to diagnose). Before proving causation, therefore, a claimant must show the existence of an injury. Taking into account the reasoning of G.C. Prec. 05-01, in a claim based on an alleged failure to diagnose, a claimant cannot demonstrate an injury unless it is shown that VA should have diagnosed the condition in question. Upon successfully demonstrating an injury or aggravation, a claimant must then prove that the injury or aggravation—the failure to diagnose—resulted in additional disability or death.

### 3. Application to Present Case

A Board determination regarding entitlement to compensation under section 1151 is a finding of fact. *See Look v. Derwinski*, 2 Vet.App. 157, 161-62 (1992). Similarly, a Board determination concerning the degree of disability under the rating code is a finding of fact. *Johnston v. Brown*, 10 Vet.App. 80, 84 (1994); *see also Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Court reviews Board findings of fact under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). Under this standard, the Court may not reverse a Board finding of fact unless the Court, in reviewing all the evidence of record, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert*, 1 Vet.App. at 52 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying this standard, "'[i]f the [Board's] account of the evidence is plausible in light of the record viewed in its entirety, the [Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* at 52 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see Mariano v. Principi*, 17 Vet.App. 305, 313 (2003) (applying "clearly erroneous" standard to assess, as directed by 38 U.S.C. § 7261(b)(1), the Board's application of the 38 U.S.C. § 5107(b) "equipoise standard").

Here, the Board was correct in determining that the appellant's contentions are not supported by the evidence of record. In its decision, the Board noted that Dr. Pritchard's opinion was equivocal regarding whether the veteran's cancer was diagnosable during the months preceding his actual diagnosis. R. at 9, 1048. The Board further noted that Dr. Pritchard's opinion did not assert that any alleged failure to diagnose by VA had resulted in the veteran's death. R. at 9. In contrast, the Board found that the July 2003 VA medical opinion, which was based on a review of the relevant treatment records, concluded that VA did not fail to diagnose the veteran's small-cell carcinoma because, at

the time of the veteran's VA treatment, there existed no empirical evidence to warrant any clinical investigation into whether he was suffering from cancer. R. at 9, 1218-20. In light of this VA medical opinion, the Board found that there was "no evidence of record suggesting that VA treatment, specifically the lack of a diagnosis of the veteran's small cell carcinoma, had the effect of hastening his death." R. at 9.

The Board also discussed the appellant's testimony concerning her observation of the veteran's allegedly worsening symptoms, determining that the appellant was not competent to testify as to "medical causation." R. at 9. The Board's characterization of the appellant's ability to testify about the onset of a specifically diagnosed disability, without the benefit of a medical diagnosis, is consistent with this Court's prior decisions holding that laypersons are not competent to testify about medical opinions or the etiology of medical conditions. *See Barr v. Nicholson*, 21 Vet.App. 303, 307 (2007); *see also Grover v. West*, 12 Vet.App. 109, 112 (1999). In July 1998, nearly three years after the veteran's death, the appellant stated that she had observed the veteran's health deteriorate, stating that he had experienced weight loss, loss of appetite, and slurred speech. Appellant's Br. at 6; R. at 1209. Although these conditions are medical symptoms readily observable by a layperson, the appellant is not qualified to testify as to the etiological significance of these symptoms. *See Barr*, *supra*. Therefore, the Board was correct in concluding that the appellant's observations lack probative value as to the question of diagnosing her husband's cancer.

In short, the appellant has not shown that VA should have diagnosed the veteran's cancer prior to his actual diagnosis. Accordingly, the Court holds that the Board's determination that the preponderance of the evidence was against the appellant's claim of entitlement to DIC benefits under 38 U.S.C. § 1151 is supported by a plausible basis in the record and is not clearly erroneous.

### 4. *Appellant's Other Arguments*

The appellant also argues that the VA medical opinion was inadequate. Appellant's Br. at 18. First, she contends that the Board erred by requesting that the VA physicians render their medical opinion based on a negligence or fault standard. Appellant's Br. at 18. As noted above, however, the medical opinion merely discusses whether VA's failure to diagnose the veteran's cancer resulted in the veteran's death, or the hastening thereof, and not whether VA exercised any particular standard of care. R. at 1218-1220. Therefore, because the VA medical opinion discussed causation

10

and not fault, and because causation is a necessary element in a section 1151 claim, the VA medical opinion was not inadequate.

Second, the appellant asserts that the opinion was inadequate because the examiners failed to consider evidence that supported her claim. Appellant's Br. at 18. The appellant's argument is not supported by this Court's jurisprudence or the governing statutory law. A medical examiner need not discuss all evidence favorable to an appellant's claim when rendering an opinion. To be adequate, a medical opinion must be based on a consideration of the veteran's prior history and examinations and describe the veteran's condition in sufficient detail so that the Board's evaluation of the claim may be fully informed. *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007); *see Moore v. Nicholson*, 21 Vet.App. 211, 218 (2007) ("'It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.'" (quoting 38 C.F.R. § 4.2)). Here, as noted, the VA opinion was based on a full review of the veteran's medical records and the VA physicians' opinion was sufficiently detailed to allow for a fully informed Board decision.

## B. Accrued Benefits Claim

With regard to her accrued benefits claim, the appellant argues that the Board failed to provide an adequate statement of reasons or bases for its decision not to assign higher ratings for the veteran's service-connected foot disabilities. Appellant's Br. at 25. She also contends that, because this matter was previously before the Court, the Board failed to comply with the Court's remand order directing it to provide an adequate statement of reasons or bases for its decision. *Id.*; *see Stegall v. West*, 11 Vet.App. 268 (1998). Specifically, the appellant contends that the Board erred in not explaining why all of the veteran's foot symptomatologies are not covered in his ratings. Appellant's Br. at 26.

In this case, the Board thoroughly discussed the applicable rating criteria and relevant evidence of record. *See* R. at 10-14. The Board reviewed the evidence and provided adequate reasons or bases for its determination that higher ratings were not warranted for the veteran's foot disabilities, clearly explaining its conclusion that the symptoms reported by the veteran indicated that a 10% rating was correct. Although the appellant argues that the Board's decision did not adequately

explain certain evidence, she does not indicate or present reasons why she believes that "certain evidence" was relevant. It is well established that the Board need not discuss all of the evidence of record so long as it addresses the relevant evidence. *See Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001) (Board not required to discuss all of the evidence of record but must discuss *relevant* evidence); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (Board must discuss, inter alia, all *relevant* evidence). As the Secretary correctly notes in his brief, the Board discussed the appellant's weakness on his right side as well as the bilateral degenerative changes. Secretary's Br. at 13; R. at 12-13. The Board decision describes, in detail, the veteran's various symptomatologies in light of limitation of motion, interference with employment status, and frequency of hospitalization. R. at 13-14. As the Board fully articulated the reasons or bases for its findings, and because its determination was plausibly based on all of the evidence of record, we hold that the Board's decision on the rating to be assigned was not clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *Hersey v. Derwinski*, 2 Vet.App. 91 (1992) (the Court may not substitute its judgment for Board merely because it would have decided the issue differently).

## III. CONCLUSION

After the Court's consideration of the appellant's and the Secretary's briefs, its review of the record, and its consideration of the parties' positions advanced at oral argument, the September 21, 2005, decision of the Board is AFFIRMED.