Citation Nr: 1045642 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 06-37 470 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little 
Rock, Arkansas

THE ISSUE

Entitlement to service connection for a psychiatric disability.

REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the 
United States

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

A. Mecone, Associate Counsel

INTRODUCTION

The Veteran had active military service from March 16 through May 
12, 1971.

This matter comes before the Board of Veterans' Appeals (Board) 
on appeal of a June 2005 rating decision by the Department of 
Veterans Affairs (VA) Regional Office (RO) in North Little Rock, 
Arkansas.

The Veteran testified before the undersigned Veterans Law Judge 
at a video conference hearing in January 2010. A transcript of 
that hearing is of record.

Procedurally, the Board notes that service connection for an 
inadequate personality was denied by way of a May 1978 rating 
decision. The Veteran did not submit a notice of disagreement 
(NOD), and therefore, the 1978 rating decision became a final 
decision. In January 1979 and February 1980, the RO denied 
applications to reopen the claim. In March 2005, the Veteran 
submitted another claim to reopen, and in June 2005, the RO 
denied the Veteran's claim to reopen after determining that no 
new and material evidence had been submitted. 

A decision of the RO becomes final and is not subject to revision 
on the same factual basis unless a notice of disagreement is 
filed within one year of the notice of decision. See 38 U.S.C.A. 
§ 7105 (West 2002); 38 C.F.R. § 20.1103 (2010). Generally, if a 
claim of entitlement to service connection has been previously 
denied and that decision became final, the claim can be reopened 
and reconsidered only if new and material evidence is presented 
with respect to that claim. 38 U.S.C.A. § 5108 (West 2002); 
38 C.F.R. § 3.156(a) (2010); see Manio v. Derwinski, 1 Vet. App. 
140, 145 (1991). However, if, after VA issues a decision on a 
claim, it receives or associates with the claims file relevant 
official service department records that existed and had not been 
associated with the claims file at the time of the prior 
decision, VA is required to reconsider the claim. 71 Fed. Reg. 
52455-52457 (Sept. 6, 2006) (codified at 38 C.F.R. § 3.156(c)).

In this case, additional relevant service department records have 
been associated with the claims file that existed at the time of 
the earlier decisions, but were not considered by the RO in its 
earlier rating decisions. Specifically, in November 2005, the 
Veteran's service personnel records were received from the 
National Personnel Records Center. These records contained 
entries referencing mental and behavioral problems. As such, VA 
must reconsider and evaluate the Veteran's claim for service 
connection on the merits, rather than characterizing it as a 
claim to reopen. This is so because additional relevant service 
personnel records have been associated with the claims file that 
were not of record at the time of the prior denials. As such, 
the issue on appeal has been characterized as a claim for service 
connection on the merits.

FINDINGS OF FACT

1. The Veteran is currently diagnosed with schizophrenia that is 
not attributable to active military service.

2. The Veteran's in-service problems were attributable to a 
mental deficiency or personality disorder.

CONCLUSIONS OF LAW

1. The Veteran does not have an acquired psychiatric disability 
that is the result of disease or injury incurred in or aggravated 
by active military service; nor may a psychosis be presumed to 
have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 
5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.303, 3.304, 
3.307, 3.309 (2010).

2. Mental deficiency or personality disorder is not a disease or 
injury within the meaning of applicable legislation; service 
connection is not warranted for either. 38 C.F.R. § 3.303(c) 
(2010). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's 
duty to notify and assist claimants in substantiating a claim for 
VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 
(West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 
3.326(a) (2010). 

Upon receipt of a complete or substantially complete application 
for benefits, VA is required to notify the claimant and his 
representative of any information, and any medical or lay 
evidence, that is necessary to substantiate the claim. 
38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. 
Principi, 16 Vet. App. 183 (2002). The VCAA notice must inform 
the claimant of any information and evidence not of record (1) 
that is necessary to substantiate the claim; (2) that VA will 
attempt to obtain on behalf of the claimant, and (3) any evidence 
that the claimant is expected to provide. 38 C.F.R. 
§ 3.159(b)(1). VCAA notice should be provided to a claimant 
before the initial unfavorable agency of original jurisdiction 
(AOJ) decision on a claim. Pelegrini v. Principi, 18 Vet. App. 
112 (2004). 

The Board notes that effective May 30, 2008, VA amended its 
regulations governing VA's duty to provide notice to a claimant 
regarding the information necessary to substantiate a claim. The 
new version of 38 CFR 3.159(b)(1), removes the portion of the 
regulation which stated that VA would request that the claimant 
provide any evidence in his possession that pertains to the 
claim. See 73 Fed. Reg. 23353-54 (April 30, 2008).

The Veteran was apprised of VA's duties to both notify and assist 
in correspondence dated in April 2005 and June 2006. (Although 
the complete notice required by the VCAA was not provided until 
after the RO adjudicated the appellant's claims, any timing 
errors have been cured by the RO's subsequent actions. Id.) 
Specifically regarding VA's duty to notify, the notifications to 
the Veteran apprised him of what the evidence must show to 
establish entitlement to service connection, what evidence and/or 
information was already in the RO's possession, what additional 
evidence and/or information was needed from the Veteran, what 
evidence VA was responsible for getting, and what information VA 
would assist in obtaining on the Veteran's behalf. The Veteran 
was apprised of the criteria for assigning disability ratings and 
for award of an effective date. See Dingess/Hartman v. 
Nicholson, 19 Vet. App. 473 (2006).

Regarding VA's duty to assist, the AOJ obtained the Veteran's 
service treatment records (STRs), service personnel records, and 
VA and private medical records. The AOJ attempted to secure 
records from the Social Security Administration (SSA), however, 
the SSA responded that the Veteran's medical records had been 
destroyed. In a July 2010 letter, the Veteran was notified that 
VA was unable to obtain his SSA records, and informed him that if 
those records were in his possession, he should send them to the 
VA. In July 2010, a VA examination with respect to the issue on 
appeal was obtained. 38 C.F.R. § 3.159(c)(4). When VA 
undertakes to provide a VA examination or obtain a VA opinion, it 
must ensure that the examination or opinion is adequate. Barr v. 
Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that 
the VA opinion obtained in this case is adequate as it was 
predicated on consideration of the STRs and VA and private 
medical records in the Veteran's claims file, and addressed all 
of the pertinent evidence of record, including the in-service 
notations referencing delusions and the Veteran's allegations 
regarding continuity of psychiatric symptomatology since service. 
Accordingly, the Board finds that VA's duty to assist with 
obtaining a VA examination or opinion with respect to the issue 
on appeal has been met. 38 C.F.R. § 3.159(c)(4). In summary, no 
duty to assist was unmet.

II. Service Connection

The Veteran contends that his currently diagnosed psychiatric 
disability is attributable to military service.

The service treatment records contain an April 1971 report of 
psychiatric evaluation reflecting a diagnosis of severe immature 
personality disorder. The report noted that the Veteran was 
slow, with poor mental abilities for learning basic combat 
skills. Although a March 1971 Report of Medical Examination 
reflected a normal psychiatric clinical evaluation, an April 1971 
Report of Medical Examination noted an abnormal psychiatric 
evaluation, with a diagnosis of severe immature personality. The 
service personnel records contain an April 1971 Discharge for 
Unsuitability, which shows that discharge was recommended because 
the Veteran was inadequate for military service. The commander 
who wrote the report stated that the Veteran had delusions, and 
believed that his grandfather, who had been dead for six years, 
talked to him. The commander also noted that the Veteran saw 
angels and his next door neighbor, and was very childish acting 
and did not comprehend the subject matter being taught. An April 
1971 Certificate by a Commanding Captain noted that the Veteran 
had an inordinate fear of weapons, which was so deep seated that 
the commander doubted it could be overcome without extensive 
psychiatric help. He stated that the Veteran lived in a dream 
world of the immature, but went one step farther in that his 
mental day dreams were bizarre and totally real to him. The 
commander stated that all situations that placed any sort of 
stress on the Veteran affected him to the point where he became 
almost paralyzed with fear. He also noted that classroom 
instruction was over the Veteran's head mentally and he did not 
have an attention span that made him trainable.

Another April 1971 statement by a commanding LTC noted that the 
Veteran dropped out of high school because the courses he was 
taking were much too advanced for his learning ability. In 
addition to being and acting very immature, the Veteran was 
easily distracted during the interview and constantly moving and 
looking all around the office. The commander stated that the 
Veteran's answers to questions indicated that they were over his 
head and the questions had to be presented in a simpler manner. 
He reported that the Veteran was easily confused and that his 
normal reaction was that of a 13 or 14-year old. The commander 
concluded that the Veteran did not have the mental abilities to 
become a productive soldier and recommended discharge.

A Hospital Summary from the Jefferson Barracks VA shows that the 
Veteran was admitted December 23, 1977 and discharged January 6, 
1978. The report shows that the Veteran underwent psychological 
testing, which indicated that his intelligence was limited, but 
that he had probably not had a psychotic break. He was diagnosed 
with probable mild mental retardation. A January 1978 Hospital 
Summary from Fort Leavenworth, Kansas VAMC, noted that the 
Veteran suffered from an adjustment reaction of young adult life, 
manifested clinically in the form of agitation and mild 
depression. Another Hospital Summary noted an admission from 
January 30, 1978 through February 27, 1978. The physician stated 
that although the Veteran was evasive, he showed no gross 
psychotic thinking and his associations were intact and there was 
no evidence of delusions or hallucinations, but he noted that the 
Veteran was mildly depressed and rather anxious.

In January 1995, a private physician S.V., M.D. at Delta 
Counseling Associates provided an Axis I diagnoses of 
Schizophrenia, Paranoid type, Depressive Disorder, not otherwise 
specified, and polysubstance dependence; and an Axis II diagnosis 
of mild mental retardation.

The Veteran was afforded a VA examination in July 2010, to 
determine whether any acquired psychiatric disorder was 
attributable to his time spent on active duty, and to also 
provide an opinion as to whether a psychiatric disability clearly 
and unmistakably pre-existed service, and if so, whether the 
evidence undebatably shows that the psychiatric disability did 
not undergo a chronic worsening during service.

The VA examiner noted that the Veteran was only in the service 
for one month and 21 days in 1971 with deficiencies with ability 
to learn military life, deficiency on the rifle range with fear 
of weapons, supposedly having delusions of a dead grandfather and 
neighbor. The examiner noted that the Veteran had been diagnosed 
with inadequate personality with use of alcohol and drugs. The 
VA examiner reported that the Veteran was not presently in 
treatment for any kind of psychiatric disorder. The examiner 
noted that in talking to the Veteran's sister, she was aware of a 
deterioration in functioning approximately five to six years 
after his discharge, which the examiner noted would coincide with 
his initial treatment as an outpatient in 1977. On examination, 
the examiner noted that the Veteran appeared to make comments 
particularly in reference to what he saw and heard, which would 
be compatible with someone of impaired mental functioning in the 
range of his more recent IQ testing. The examiner found that the 
Veteran did not appear to be depressed or anxious, although he 
rocked in his chair in a manner consistent with someone with a 
lower IQ. In summary, the VA examiner found that the Veteran was 
markedly impaired with low intellectual functioning possibly 
secondary to alcohol and drug use.

After examining the Veteran, and taking into consideration the 
information contained in the STRs, as well as his post-service 
psychiatric treatment, the VA examiner opined that the Veteran's 
current diagnosis of paranoid schizophrenia with depressive 
disorder did not appear to be traceable to the service references 
to delusions. It was felt that his in-service problems were more 
of a sense of being overwhelmed by his inadequate personality and 
high probability of a low IQ at that time. The examiner noted 
that he could not comment on whether there was a pre-existing 
disability by history and what was contained in the claims file.

Service connection may be granted for disability resulting from 
disease or injury incurred or aggravated during active service. 
38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection 
may also be granted for any injury or disease diagnosed after 
service, when all the evidence, including that pertinent to 
service, establishes that the disease or injury was incurred in 
service. 38 C.F.R. § 3.303(d). Generally, service connection 
requires (1) medical evidence of a current disability, (2) 
medical evidence, or in certain circumstances lay testimony, of 
in-service incurrence or aggravation of an injury or disease, and 
(3) medical evidence of a nexus between the current disability 
and the in-service disease or injury. See Hickson v. West, 12 
Vet. App. 247 (1999). Further, it is not enough that an injury 
or disease occurred in service; there must be chronic disability 
resulting from that injury or disease. If there is no showing of 
a resulting chronic condition during service, then a showing of 
continuity of symptomatology after service is required to support 
a finding of chronicity. 38 C.F.R. § 3.303(b).

Certain chronic diseases, including psychoses, may be presumed to 
have been incurred in or aggravated by active military service if 
shown to a compensable degree within one year of separation from 
qualifying active service. 38 C.F.R. §§ 3.307, 3.309. 

Congenital or developmental defects, personality disorders and 
mental deficiency are not diseases or injuries within the meaning 
of applicable legislation and are therefore not disabilities that 
may be service connected. See 38 C.F.R. § 3.303(c).

Here, although the service treatment records contain a statement 
from the Veteran's commander noting that he experienced 
delusions, the 2010 VA examiner attributed the Veteran's in-
service mental problems, including his delusions, to mental 
deficiency and personality disorder, not to other psychiatric 
disability. The VA examiner explained that the references to 
delusions and other in-service mental problems, were due to the 
Veteran being overwhelmed by his inadequate personalty and high 
probability of a low IQ at that time. After reviewing the 
service personnel and service medical records, the VA examiner 
believed that the in-service evidence of mental and behavioral 
problems were attributable to the Veteran's mental deficiency. 
There is no medical opinion of record which contradicts this 
examiner's opinion. In fact, the relevant evidence supports the 
VA examiner's assessment. For example, in addition to the in-
service reference to delusions, the service records show that 
several different commanders questioned the Veteran's mental 
ability to learn basic army skills. Specifically, the April 1971 
report of psychiatric evaluation noted that the Veteran was slow 
with poor mental abilities for learning basic combat skills, and 
in an April 1971 Discharge for Unsuitability, the commander 
stated that the Veteran did not understand the subject matter 
being taught. Finally, an April 1971 Certificate by a Commanding 
Captain noted that classroom instruction was over the Veteran's 
head mentally and he did not have an attention span that made him 
trainable. Here, the service records focus on the Veteran's 
inability to understand what was being taught, his poor mental 
ability, and his immaturity. As such, the service record 
supports the 2010 VA examiner's assessment that the Veteran's in-
service mental problems were part of the same process as his 
mental deficiency.

In this case, the Veteran was ultimately discharged due to an 
inadequate personality after a determination was made that his 
mental deficiency made him unable to perform at the standard 
necessary for the Army. Further, a VA examiner determined that 
the in-service mental and behavioral problems were manifestations 
of the Veteran's mental retardation. As noted above, mental 
deficiency is not a disease or injury within the meaning of 
legislation that allows for the award of service connection for 
disability. See 38 C.F.R. § 3.303(c). Nor is a personality 
disorder. Id. Therefore, the Veteran cannot obtain an award of 
service connection on this basis.

Although the 2010 VA examiner failed to render an opinion as to 
whether the Veteran's in-service mental health problems clearly 
and unmistakably existed prior to service, the Veteran's in-
service mental problems were found to be symptoms of his later 
diagnosed mental deficiency (as opposed to any acquired 
psychiatric disability) which may not be service connected.

Finally, as the earliest diagnosis of schizophrenia noted in the 
record is 1995; service connection on a presumptive basis due to 
a psychosis manifested to a compensable degree within a year of 
discharge from service is not warranted. 38 C.F.R. §§ 3.307, 
3.309

Based on the above analysis, the Board finds that service 
connection for an acquired psychiatric disability is not 
warranted, and service connection may not be granted for mental 
deficiency or personality disorder. 38 C.F.R. § 3.303(c). The 
preponderance of the evidence is against the claim.

ORDER

Service connection for a psychiatric disability is denied.

________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs