Citation Nr: 1536796 
Decision Date: 08/28/15 Archive Date: 09/04/15

DOCKET NO. 07-09 819 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to service connection for tinnitus.

2. Entitlement to service connection for a disability manifested by vertigo, dysequilibrium, loss of balance, and/or dizziness, to include fatigue and ataxia due to cerebellar degeneration. 

3. Entitlement to service connection for headaches, including migraines.

4. Whether new and material evidence has been received to reopen a claim for entitlement to service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees, and if so, whether service connection is warranted.

5. Whether new and material evidence has been received to reopen a claim for entitlement to service connection for low back disability.



REPRESENTATION

Appellant represented by: Arizona Department of Veterans Services


WITNESSES AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

K. Hudson, Counsel


INTRODUCTION

The Veteran served on active duty from June 1963 to May 1967, and from September 1990 to May 1991. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a regional office (RO) rating decision of March 2006, which denied the claims on appeal on the basis that no new and material evidence had been submitted to reopen previously denied claims. See 38 C.F.R. § 3.156 (2015). However, the issue of service connection for headaches was initially denied in March 2006, and the Veteran perfected an appeal as to that issue. Subsequently, the issue was expanded to include migraines, but that did not render the prior issue, already on appeal, final. 

In a March 2000 rating decision, the RO denied service connection for disabilities including tinnitus, vertigo (claimed as equilibrium/loss of balance), fatigue, and joint pain and swelling. In that decision, it was noted that service treatment records for the Veteran's National Guard service could not be obtained for review, and that the claim would be reconsidered if the records were located at a different date. The records of the Veteran's National Guard service from 1979 to 1996 were located, but the November 2000 reconsideration of the Veteran's claim did not include the issues of entitlement to service connection for tinnitus, vertigo (claimed as equilibrium/loss of balance), or fatigue. Because these records, including the records pertaining to the Veteran's Persian Gulf service from January 1991 to April 1991, were not considered with respect to those issues, the claims must be reconsidered. 38 C.F.R. § 3.156(c). In this regard, these records existed prior to the initial decision, and were subsequently forwarded by the service department after the initial request for records. Moreover, the Veteran's contentions are that the disabilities at issue were incurred as a result of that service. Accordingly, those claims must be decided on the merits, without first requiring that new and material evidence be received, and the issues have been redesignated to reflect this status. 

The issue of service connection for cerebellar degeneration with ataxia has not been explicitly developed by the RO for appellate consideration. However, as discussed below, the symptoms of vertigo, dysequilibrium, loss of balance, and/or dizziness include ataxia, and have been medically attributed to cerebellar degeneration; therefore, the issue of service connection for the disease which has resulted in those symptoms is properly before the Board. 

The November 2000 reconsideration did include the issue of service connection for joint pain and swelling, and the issue of service connection for a low back disability was considered for the first time in that decision. As discussed below, new and material evidence is therefore required to reopen those claims. 

The issue of service connection for a low back disability is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.




 (CONTINUED ON NEXT PAGE)



FINDINGS OF FACT

1. Tinnitus had its onset during the Veteran's period of active duty. 

2. Cerebellar degeneration with ataxia, to include vertigo, dysequilibrium, loss of balance, and/or dizziness and fatigue, had its onset during or within a year of the Veteran's period of active duty from September 1990 to May 1991. 

3. The Veteran's headaches are caused by cerebellar degeneration.

4. In an unappealed rating decision dated in November 2000, the AOJ denied service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees, and a low back disorder.

5. Evidence received since the November 2000 RO decision denying service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees relates to an unestablished fact necessary to substantiate the claim, and raises a reasonable possibility of substantiating the claim. 

6. Joint pain and swelling of the hands, right elbow, shoulders, hips and knees is a manifestation of service-connected cerebellar degeneration.

7. Evidence received since the November 2000 RO decision denying service connection for a low back disability relates to an unestablished fact necessary to substantiate the claim, and raises a reasonable possibility of substantiating the claim. 


CONCLUSIONS OF LAW

1. Tinnitus was incurred in active military service. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

2. Cerebellar degeneration with ataxia, to include vertigo, dysequilibrium, loss of balance, and/or dizziness and fatigue, was incurred in active military service. 38 U.S.C.A. §§ 1110, 1112, 1113, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

3. Headaches are proximately due to cerebellar degeneration. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.310 (2015).

4. A November 2000 rating decision denying service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees, and a low back disability, is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.200, 20.302 (2015).

5. New and material evidence has been received to reopen the claims for service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees, and a low back disability. 38 U.S.C.A. §§ 5108, 7104 (West 2014); 38 C.F.R. § 3.156 (2015).

6. Joint pain and swelling of the hands, right elbow, shoulders, hips and knees are proximately due to cerebellar degeneration. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.310 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection

As the Board is granting the claims for service connection decided herein, compliance with VA's duty to notify and assist need not be further considered. 38 U.S.C.A. §§ 5103 , 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2015).

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2002). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303(d). 

Tinnitus

On a VA audiological evaluation in April 1995, the Veteran reported a 3-year history of tinnitus. When he filed his claim for benefits in December 1998 claim, he provided a history of experiencing tinnitus since his return from the Persian Gulf. On a VA examination audiology examination in June 2013, the examiner noted that the Veteran's National Guard records showed tinnitus, but that the Veteran also reported significant noise exposure in his civilian life, including jackhammers in an underground mine. The examiner concluded that it was not possible to determine if the etiology was related to military noise exposure without resorting to mere speculation. 

Notwithstanding any noise exposure occurring prior to his second period of active service, the fact remains that the Veteran did not begin reporting tinnitus until about 1995, at which time he reported 3-year history of the condition. He also reported the onset of tinnitus as shortly after his return from the Gulf War. The VA neurology examination in April 2011 noted that tinnitus was constant since the military. The Board finds the Veteran's symptoms of continuity of symptomatology since service to be credible. Accordingly, service connection is warranted. In reaching this determination, the benefit-of-the-doubt rule has been applied. See 38 U.S.C.A. § 5107(b). 


Cerebellar Degeneration

On a VA examination in April 1999, the Veteran reported that approximately 6 to 8 months after returning from Saudi Arabia, he began having very gradual progressive problems with his gait, especially his balance, as well as slurring of his speech and some ringing in his right ear. These symptoms progressed very gradually. The examiner concluded that the Veteran had midline cerebellar and possibly some brain stem findings. Given the course and onset, it could be typical of a progressive degenerative disorder such as cerebellar degeneration. The examiner stated that it was not clear that there was any connection between the Veteran's problem and the Gulf War. The magnetic resonance imaging (MRI) scan of the brain was negative. 

On a VA examination in March 2011, the examiner reviewed the claims file and medical records. He commented that the records showed a diagnosis of cerebellar ataxia, and that there were several diagnoses from cerebellar ataxia to neurodegenerative disorder. The examiner noted that imbalance began in 1991, after his return from Saudi Arabia. In November 1994, an examination disclosed that he was unable to do a heel and toe walk due to loss of balance. A National Guard examination in March 1995 noted chronic vertigo and labyrinthine disease. A private physician in January 2006 diagnosed primary cerebellar degeneration; the examiner noted that "primary" was related to genetic or unknown causes of degeneration. 

The examiner summarized that the Veteran had cerebellar degeneration with onset in 1991. He diagnosed ataxia secondary to cerebellar degeration, progressive. The examiner stated that the Veteran's loss of coordination historically started in the Persian Gulf before he came home in April 1991 or 1992. His condition arose in the military in 1991 when he began to lose his balance. During his subsequent time with the National Guard there were several medical visits where he reported loss of balance. There were no definite answers until about 2006, when an MRI revealed the progressive effects of atrophy in his cerebellum. The examiner commented that "such is the usual story of progressive ataxia from cerebellar degeneration." The Veteran was now in the moderate to moderately severe stages of this progressive, usually genetic, condition. The examiner identified the manifestations as slowness and loss of coordination in both upper extremities; unable movements and balance in both lower extremities; speech and swallowing changes; diplopia; and "fatigue in combination with fibromyalgia induced fatigue, each due to cerebellar degeneration." The examiner saw no evidence for a Gulf War condition, or undiagnosed illness.

As can be seen, the examiner concluded that the Veteran's cerebellar degeneration was likely genetic, and was not due to a Gulf War illness. However, these causal factors are not significant, because the examiner also concluded that the Veteran's condition began in the military in 1991, when he began to lose his balance. If the condition began in service, a grant of service connection does not require linking it to a specific in-service cause. Indeed, it is well-established that service connection may be granted for congenital or hereditary diseases if initially manifested in or aggravated by service. VAOPGCPREC 82-90, 55 Fed. Reg. 45711 (1990); VAOPGCPREC 67-90, 55 Fed. Reg. 43253 (1990). In particular, diseases of hereditary origin can be incurred in service. VAOPGCPREC 67-90, 55 Fed. Reg. 43253 (1990). According to this opinion, such diseases "can be considered to be incurred in service if their symptomatology did not manifest itself until after entry on duty." Id. The opinion went on to explain that "Only when symptomatology and/or pathology exist can he or she be said to have developed the disease." Id. "In this context we use the term "pathology" in the sense of an active disease process, not just a mere predisposition to develop a disease, which process may or may not precede symptomatology." Id. 

In this case, there is no evidence that the disease manifested prior to service. Contemporaneous complaints are shown shortly after his return from the Gulf War. Moreover, over the years, the Veteran has consistently ascribed the onset of his symptoms to his Gulf War service, or shortly thereafter. This has been corroborated in numerous lay statements submitted on his behalf, and was accepted by the VA examiner. The Board finds the lay evidence to be credible. Given these and the above factors, service connection for cerebellar degeneration, with ataxia, to include vertigo, dysequilibrium, loss of balance, and/or dizziness and fatigue, is warranted. In reaching this determination, the benefit-of-the-doubt rule has been applied. 38 U.S.C.A. § 5107(b); see Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Headaches

Service connection for headaches was denied on the basis that private medical records dated in January 2006 showed that the Veteran's headaches were due to cerebellar degeneration. Therefore, since service connection for cerebellar degeneration is being granted in this decision, service connection for headaches, as secondary to cerebellar degeneration, is warranted. 38 C.F.R. § 3.310 (Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected.). In reaching this determination, the benefit-of-the-doubt rule has been applied. See 38 U.S.C.A. § 5107(b). 

Thus, the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is inapplicable, and the claim must be denied. 38 U.S.C. § 5107(b); see Ortiz, supra; Gilbert, supra. 

New and Material Evidence

For the purpose of addressing whether new and material evidence has been received to reopen the claims for service connection addressed below, compliance with the VA's duties to assist and notify need not be discussed. See U.S.C.A. §§ 5103, 5103A (West 2014). 

As a threshold matter, the Board must determine whether new and material evidence has been submitted to reopen a previously denied claim, notwithstanding any action by the RO to reopen the claim. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001) (reopening after a prior unappealed RO denial); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996) (reopening after a prior Board denial). 

In general, a decision of the Board or the RO that is not appealed within the prescribed time period is final. 38 U.S.C.A. §§ 7104, 7105(c) (West 2014). However, if new and material evidence is received with respect to a claim which has been disallowed, the claim will be reopened, and if so reopened, the claim will be reviewed on a de novo basis. 38 U.S.C.A. § 5108; Evans v. Brown, 9 Vet. App. 27 (1996); Manio v. Derwinski, 1 Vet. App. 140 (1991). In considering whether there is "new and material evidence," all evidence submitted since the last prior final decision, on any basis, must be considered. Evans.

New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

Multiple Joint Pain

Service connection for pain in multiple joints was denied by the RO in March 2000 and again, after the Veteran requested reconsideration and additional service treatment records were received, in November 2000. The Veteran did not appeal the latter decision or indicate any disagreement with it. Also, no evidence was received within the appeal period, which would potentially affect finality of the rating decision. 38 C.F.R. § 3.156(b); see, e.g., King v. Shinseki, 23 Vet. App. 464, 466-67 (2010); Buie v. Shinseki, 24 Vet. App. 242, 252 (2011). The November 2000 rating decision is thereby final. 

Evidence received since the November 2000 rating decision includes private medical records dated in January 2006, which attribute the Veteran's joint pains to cerebellar degeneration. In the March 2006 rating decision currently on appeal, the RO declined to reopen the previously denied claim on the basis of that medical evidence. However, in this decision, the Board has granted service connection for the cerebellar degeneration. Accordingly, the claim for service connection for multiple joint pain is reopened, and VA must review the claim in light of all the evidence, new and old. 38 C.F.R. § 3.156. 

The January 2006 medical records attribute the Veteran's joint pains to his now service-connected cerebellar degeneration. There is no medical evidence to the contrary. The Board thereby finds that service connection for multiple joint pains is warranted as secondary to cerebellar degeneration. 38 C.F.R. § 3.310. In reaching this determination, the benefit-of-the-doubt rule has been applied. See 38 U.S.C.A. § 5107(b). 

Low Back

Service connection for a low back disability was denied by the RO in November 2000. The Veteran did not appeal the latter decision or indicate any disagreement with it. Also, no evidence was received within the appeal period, which would potentially affect finality of the rating decision. 38 C.F.R. § 3.156(b); see, e.g., King v. Shinseki, 23 Vet. App. 464, 466-67 (2010); Buie v. Shinseki, 24 Vet. App. 242, 252 (2011). The November rating decision is thereby final. 

Evidence of record at the time of the November 2000 decision included service treatment records, which did not show any complaints or abnormal findings during any period of active duty National Guard records dated in April 1988 noted that the Veteran reported that he suffered from back pain with prolonged standing, but no diagnosis was made. On a medical history obtained in connection with an examination for release from active duty in April 1991 disclosed a history of recurrent back pain, and the Veteran said he had been "hit in back." However, an April 1991 internal medicine consult noted that he had developed abdominal pain after a physical assault in Saudi Arabia. A Gulf War protocol examination in November 1994 noted the Veteran to be slightly tender to palpation over the spine. Range of motion was normal and there were no deformities, and no diagnosis was given. Again, a periodic examination in March 1995 noted complaints of low back pain, without elaboration. The Veteran did not provide any contentions as to why he believed service connection for a back condition was warranted. Based on this evidence, the RO denied the claim. 


Evidence received since the November 2000 decision includes a report of a VA examination in which found X-ray evidence of some bony demineralization and slight degenerative joint disease of the lumbosacral spine. Since the evidence previously of record did not confirm the presence of a chronic back disability, this evidence of current disability is material to the Veteran's claim. Accordingly, the claim is reopened with the submission of new and material evidence, and VA must review the claim in light of all the evidence, new and old. 38 C.F.R. § 3.156. 


ORDER

Entitlement to service connection for tinnitus is granted.

Entitlement to service connection for a disability manifested by vertigo, dysequilibrium, loss of balance, and/or dizziness, to include fatigue and ataxia due to cerebellar degeneration is granted. 

Entitlement to service connection for headaches is granted.

The application to reopen a claim for service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees is granted. 

Entitlement to service connection for joint pain and swelling of the hands, right elbow, shoulders, hips and knees is granted.

The application to reopen a claim for service connection for a low back disability is granted. 


REMAND

As noted above, the issue of service connection for a low back disability has been reopened by the submission of new and material evidence. An opinion is needed as to whether the Veteran's low back disability was of service onset, or caused or aggravated by the now service-connected cerebellar degeneration. In addition, recent treatment records should be obtained.

Accordingly, the case is REMANDED for the following action:

1. Obtain all VA treatment records dated from March 2011 to the present, to particularly include any imaging studies, such as X-rays or MRI scans, of the spine.

2. Ask the Veteran to identify and authorize the release of all private treatment records which show the current or recent status of his low back, to particularly include any imaging studies, such as X-rays or MRI scans. Obtain any such records adequately identified.

3. Thereafter, refer the electronic claims file to an appropriate physician for an opinion concerning the etiology of the Veteran's degenerative joint disease and demineralization of the low back. An examination is not required unless the physician deems such to be necessary. The opinion should address the following:
* Is it at least as likely as not that a the Veteran's low back disability had its onset during service, in particular, during the Veteran's period of active duty from September 1990 to May 1991?
* Is it at least as likely as not that the Veteran's low back disability was caused or aggravated (permanently worsened) by the now service-connected cerebellar degeneration and/or any associated symptomatology?
A rationale for all conclusions should be provided. 

4. Review the reopened claim for service connection for a low back disability on the merits. If the decision remains adverse to the Veteran, furnish him and his representative with a supplemental statement of the case, and give them an opportunity to respond, before the case is returned to the Board. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs