# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-4870

THOMAS STEVENSON, JR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 19, 2022                    Decided October 4, 2022)

*Maxwell D. Kinman*, of Mason, Ohio, for the appellant.

*Anita U. Koepcke*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah E. Wolf*, Acting Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and TOTH and LAURER, *Judges.*

BARTLEY, *Chief Judge*: Veteran Thomas Stevenson, Jr., appeals through counsel a March 25, 2020, Board of Veterans' Appeals (Board) decision that denied entitlement to compensation under 38 U.S.C. § 1151 for an unhealed wound of the right abdomen. Record (R.) at 5-9. The appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

Under section 1151(a), veterans may be compensated for additional disability arising from VA medical treatment.[1] This matter was referred to a panel of this Court, with oral argument,[2] to address the definition of "disability" as used in section 1151 and whether the term "additional disability" requires persistence of a disability for any particular time period. We conclude that the term "disability" in section 1151 carries the same meaning as in 38 U.S.C. § 1110. We also

---

[1] Section 1151 provides compensation for qualifying additional disability or qualifying death caused by VA hospital care, surgical or medical treatment, examination, training and rehabilitation services under Title 38, chapter 31, or compensated work therapy program under 38 U.S.C. § 1718. For ease of reading, and because Mr. Stevenson's case implicates only additional disability as a result of VA medical treatment, we refer to those statutory terms alone in our decision.

[2] *Stevenson v. McDonough*, No. 20-4870, Oral Argument [hereinafter Oral Argument]. Available at https://www.youtube.com/watch?v=28W6N5jdgqs. In this opinion, time codes for the oral argument are based on the YouTube video, which differ from the mp3 audio file available on the Court's website.

conclude that under section 1151 "additional disability" need not persist for any particular time period, and that additional disability that resolves during the pendency of a claim for section 1151 benefits does not foreclose entitlement to section 1151 compensation so long as the other requirements for entitlement under that section are met.

Because it is undisputed that Mr. Stevenson demonstrated additional disability during the pendency of his section 1151 claim, we will set aside the March 2020 Board decision, reverse the Board determination that the veteran did not demonstrate additional disability under section 1151, and remand this matter for readjudication consistent with this decision.

## I. FACTUAL BACKGROUND

Mr. Stevenson served honorably in the U.S. Army from January 1968 to December 1970, including service in the Republic of Vietnam. R. at 13,390. Among other things, he is service connected for diabetes. *See* R. at 307.

In April 2012, Mr. Stevenson developed abdominal pain that was ultimately determined to be acute gall bladder inflammation (cholecystitis). *See* R. at 7220-21. On April 18, 2012, he underwent emergency gall bladder removal (cholecystectomy) at a VA medical center (VAMC). *Id*. Although the procedure was planned as laparoscopic, it was converted to traditional open surgery due to Mr. Stevenson's gangrenous gall bladder and peritonitis. R. at 10,308.

Following surgery, Mr. Stevenson developed pain at the incision site. *See, e.g.*, R. at 9841 (June 2012 VA treatment record), 9690 (May 2013 VA treatment record), 9271 (July 2014 VA treatment record). In May 2013, he was diagnosed with scar neuroma and underwent treatment via trigger point injections. R. at 9690. Although the trigger point injections provided some relief, he continued to experience post-incisional scar pain.

On July 1, 2014, Mr. Stevenson underwent radiofrequency ablation (RF ablation)[3] by an anesthesiologist at a VAMC to treat the painful scar. R. at 9022, 9024-21, 9271; *see* R. at 9015-19, 9023-24 (consent documentation). He "tolerated the procedure well without any sign of complication," R. at 9024, 9271; *see* R. at 9022, 9030, and was discharged to home later that day, R. at 9030-31.

---

[3] Radiofrequency ablation uses heat induced by low-frequency electromagnetic waves to destroy dysfunctional tissue. *Radiofrequency Ablation* and *Radiofrequency Therapy*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 4, 1884 (33d ed. 2020) [hereinafter DORLAND'S].

On July 8, 2014, Mr. Stevenson presented to the VAMC reporting clear discharge and swelling at the ablated area. The anesthesiologist cleaned the ablated area and applied triple antibiotic ointment and sterile gauze. R. at 9271.

In August 2014, Mr. Stevenson presented to a VA community-based outpatient clinic with an open wound, bleeding, pain, and increased swelling at the RF ablation site and stated that he had received treatment at an emergency department twice in the preceding few days. R. at 9252. A VA doctor diagnosed dehiscence[4] of a portion of the cholecystectomy scar and documented an open wound in the right upper abdominal quadrant that was 3 centimeters (cm) long by 2 cm deep and was draining serosanguinous fluid. R. at 9247; *see* R. at 9227-28. The wound tested positive for methicillin-resistant *Staphylococcus aureus* (MRSA), and Mr. Stevenson was prescribed a 10-day course of antibiotic treatment. *Id*. Home health nursing care was also ordered for daily dressing changes. R. at 9228.

In September 2014, Mr. Stevenson filed a claim seeking compensation under section 1151 for a right-sided abdominal wound due to the July 2014 RF ablation procedure. At that time, he stated that following the ablation procedure, he "now ha[s] a painful hole in [his] stomach." R. at 9402.

Meanwhile, Mr. Stevenson's condition improved with antibiotic treatment and wound care. *See* R. at 9216-17. When he returned to the VAMC in February 2015 for a follow-up appointment, the VA clinician noted a completely healed wound without signs of herniation or infection. R. at 9150.

In September 2015, a VA regional office (RO) denied the section 1151 claim. R. at 9009-14. In January 2016, Mr. Stevenson filed a Notice of Disagreement, asserting that the VAMC was responsible for the MRSA infection and subsequent unhealed and painful wound. R. at 8984-85.

The course of procedural development, if any, between January 2016 and March 2018 is unclear. Suffice it to say that in March 2018, Mr. Stevenson elected into VA's modernized review process, selecting higher-level review at the RO. *See* R. at 6, 7533. In September 2018, the higher-level review adjudicator identified a duty-to-assist error and ordered that a VA examination be provided. R. at 7533.

---

[4] Dehiscence means splitting open of a surgical wound. *Wound Dehiscence*, DORLAND'S at 475.

In February 2019,[5] a VA examiner found no evidence of additional disability as the surgical wound was completely closed, healed, and stable. R. at 7210-13, 7218-19. The examiner stated that a reopened wound following RF ablation for a scar neuroma is a known complication in patients with diabetes, like Mr. Stevenson, as wound healing in such patients tends to be slow and eventful. R. at 7219.

In March 2019, the RO issued a higher-level review decision denying the section 1151 claim because it found no evidence of additional disability proximately caused by VA treatment. R. at 6917-20. In April 2019, Mr. Stevenson filed a supplemental claim. R. at 6903-06. At that time, he did not dispute that his wound had healed but stated that he was seeking compensation for the period that the wound was open as it required home health nursing care and resulted in pain and suffering. R. at 6905; *see* R. at 6901 (May 2019 statement). In July 2019, the RO confirmed and continued its previous denial. R. at 305-06. In August 2019, Mr. Stevenson filed VA Form 10182 appealing to the Board and selecting the direct review docket. R. at 287.

In the March 2020 decision on appeal, the Board denied entitlement to compensation under section 1151, finding that the preponderance of the evidence demonstrated that Mr. Stevenson did not incur additional disability. R. at 5. In reaching its conclusion, the Board relied on the 2019 VA examiner's conclusion that there was no evidence of an unhealed wound. R. at 7. The Board stated that the examiner noted that his RF ablation caused swelling and required antibiotic ointment and wound care dressing changes. *Id*. Ultimately though, the Board concluded that, because Mr. Stevenson's wound healed, he did not establish additional disability under section 1151. R. at 7-8. This appeal followed.

## II. ARGUMENTS

Mr. Stevenson argues that the Board erred in concluding that he did not demonstrate additional disability. Appellant's Brief (Br.) at 5-8. He contends that the Board, and the 2019 VA examiner upon whose opinion the Board relied, improperly focused on whether he demonstrated additional disability at the time of the 2019 VA examination and failed to consider whether he had additional disability when he filed his claim. *Id*.; Oral Argument at 2:45-3:57. He analogizes section 1151 compensation to service-connected disability compensation and argues that the

---

[5] The VA examiner performed the examination in January 2019 and provided the medical opinion in February 2019. For clarity purposes, we will refer to this as the February 2019 VA examination.

requirement for demonstrating current disability "'is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim and that a claimant may be granted service connection even though the disability resolves prior to the Secretary's adjudication of the claim.'" Appellant's Br. at 8 (quoting *McClain v. Nicholson*, 21 Vet.App. 319, 321 (2007)).

The Secretary argues that the Board properly found that Mr. Stevenson did not demonstrate additional disability because his condition prior to the July 2014 RF ablation procedure and his condition in October 2014, following August and September 2014 treatment, was the same. Secretary's Br. at 7-12; *see* Oral Argument at 21:19-21:59; 24:41-25:11; 58:20-59:14. He argues that Mr. Stevenson's condition resolved and so does not constitute additional disability warranting compensation under section 1151. Secretary's Br. at 10; Oral Argument at 28:17-28:56. The Secretary also asserts that the meaning of disability in section 1110 is not analogous to disability as used in section 1151. Secretary's Br. at 11; Oral Argument at 33:15-34:03; 54:04-54:58.

### III. ANALYSIS

A. Legal Landscape

Obtaining compensation under section 1151 requires satisfying three elements. *See Viegas v. Shinseki*, 705 F.3d 1374, 1377 (Fed. Cir. 2013). First, the veteran must incur additional disability not the result of willful misconduct. 38 U.S.C. § 1151(a). Second, that disability must have been "caused by hospital care, medical or surgical treatment, or examination furnished [to] the veteran" either by VA or at a VA facility. 38 U.S.C. § 1151(a)(1); *see* 38 C.F.R. § 3.361(c) (2022). Finally, the "proximate cause" of the disability must either be "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part" of VA or "an event not reasonably foreseeable." 38 U.S.C. § 1151(a)(1)(A)-(B); *see* 38 C.F.R. § 3.361(d); *see also Viegas*, 705 F.3d at 1377-78 (recounting the three elements). This case involves the first element of section 1151, the requirement that a veteran incur additional disability not resulting from willful misconduct.[6]

---

[6] Because the Board found that Mr. Stevenson did not demonstrate additional disability, it did not proceed to consider the willful misconduct question. However, there is nothing in the record before the Court suggesting willful misconduct on Mr. Stevenson's part.

## B. Defining "Additional Disability"

Section 1151 does not define additional disability. In the absence of an express statutory definition, the presumption is "that Congress intended to give these words their ordinary meanings." *Terry v. Principi*, 340 F.3d 1378, 1382-83 (Fed. Cir. 2003) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)); *see Saunders v. Wilkie*, 886 F.3d 1356, 1362 (Fed. Cir. 2018).

The plain and ordinary meaning of "additional" in 1996 when the current version of section 1151 was promulgated,[7] as now, is more or added. *See, e.g.*, WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3d ed. 1988) (defining as "added, more, extra"); NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining as "added, extra, or supplementary to what is already present or available"); *see also* ROGET'S II THE NEW THESAURUS, EXPANDED EDITION (1988) (listing synonyms of "added, extra, fresh, further, more, new, other"). This meaning comports with the intent of section 1151 to compensate veterans who are in a comparatively worse position as a result of VA medical or surgical treatment. *See* 38 U.S.C. § 1151 (titled "Benefits for persons *disabled* by treatment or vocational rehabilitation" (emphasis added)); *Gardner v. Brown,* 5 F.3d 1456, 1463 (Fed. Cir. 1993) (*Gardner II*) ("The legislative history convincingly demonstrates that Congress's paramount concern was to compensate veterans injured by VA medical treatment."), *aff'd*, 513 U.S. 115 (1994) (*Gardner III*).[8] Thus, assuming all other requirements for section 1151 are met, the additional disability requirement ensures that section 1151 compensation is awarded for disability not present prior to VA treatment.

The plain meaning of "additional" comports with § 3.361(b), the corresponding regulation for section 1151(a). The regulation provides that, when determining whether a veteran has additional disability, "VA compares the veteran's condition immediately before the beginning of the . . . medical or surgical treatment . . . upon which the claim is based to the veteran's condition after such . . . treatment . . . has stopped." 38 C.F.R. § 3.361(b); *see Viegas*, 705 F.3d at 1377 n.1 (recounting § 3.361(b)). While the regulation does not define "additional disability," it provides temporal guideposts for VA adjudicators to determine whether there is added disability by

---

[7] *See* Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997, Pub. L. 104-204, § 422, 110 Stat. 2874 (Sept. 26, 1996).

[8] Although *Gardner II* considered an earlier version of section 1151 that did not require VA fault, Congress's 1996 amendment adding the fault requirement did not change the overarching intent of the statute to compensate veterans injured by VA treatment. *See Viegas*, 705 F.3d at 1382.

comparing the veteran's condition before the relevant VA medical or surgical treatment with that after such VA treatment has ceased.

Having established the ordinary meaning of "additional" applies in section 1151, the Court moves on to consider the meaning of "disability." We conclude that "disability" carries the same meaning in section 1151 as in section 1110. In *Saunders*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) defined "disability" in section 1110 as "functional impairment of earning capacity." 886 F.3d at 1363. The Federal Circuit arrived at that definition after reviewing the plain meaning of "disability," *id*. at 1362 (citing various dictionary definitions), the overall purpose of veterans compensation, *id*. at 1362-63 (citing 38 U.S.C. § 1155; *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc); 38 C.F.R. §§ 4.1 (2017), 4.10 (2017)), and the parties' proffered definitions, *id*. at 1362. Like section 1110, section 1151 does not contain an express definition of "disability." Although an award of compensation for a qualifying additional disability under section 1151 does not convey service-connected status, section 1151 provides compensation for certain disabilities stemming from VA treatment as though those disabilities were service connected. *See Alleman v. Principi*, 349 F.3d 1368, 1370-71 (Fed. Cir. 2003); *Burkhart v. Wilkie*, 30 Vet.App. 414, 417-18 (2019). Employing the same definition of "disability" in section 1151 as in section 1110 accomplishes the statutory directive that compensation for a qualifying additional disability under section 1151 "shall be awarded . . . in the same manner as if such additional disability . . . were service-connected." 38 U.S.C. § 1151(a).

Further caselaw supports our conclusion regarding the meaning of "disability." In *Gardner III*, the Supreme Court in interpreting an earlier version of section 1151 specifically referenced section 1110 as an analogous statute in gleaning a harmonious definition in that case. 513 U.S. at 118-19. In *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, the Federal Circuit noted that the consistent-usage canon of statutory construction applies to two different sections of a complex statutory scheme where those sections serve the same purpose. 260 F.3d 1365, 1379 (Fed. Cir. 2001). Section 1151 compensates veterans injured by VA medical treatment and section 1110 compensates veterans injured by service—although these benefits differ in some respects, their purpose is sufficiently similar that our reliance on the consistent-usage canon makes a good deal of sense. And in *Allen* this Court analyzed 38 U.S.C. §§ 1110, 1131, 1153, and 1155 to conclude that the definition of "disability" is consistent as used across chapter 11 of title 38 of the United States Code. 7 Vet.App. at 446-49.

7

Thus, the plain meaning of "additional disability" as used in section 1151 is "more" or "added" "functional impairment in earning capacity." No language in section 1151 pertains to the duration of the "more" or "added" functional impairment in earning capacity. Thus, the Court cannot sanction the Secretary's view in that regard. *See Petite v. McDonough*, 35 Vet.App. 64, 70 (2021) (citing *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010), *Bates v. United States*, 522 U.S. 23, 29 (1997), and *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993), for the general proposition that courts should not ordinarily read limitations into statutes that are not present in their text). There is no statutory restriction or direction regarding the duration or length of time that the additional disability must last. As noted earlier, for a veteran to receive compensation under section 1151, the additional disability must be a "qualifying" additional disability, which the statute defines as (1) not due to the veteran's willful misconduct, (2) caused by VA treatment, and (3) proximately caused by VA fault or an event not reasonably foreseeable. 38 U.S.C. § 1151(a)(1)(A)-(B). None of those requirements can be read, explicitly or implicitly, as requiring that an additional disability be permanent or of a particular duration to warrant entitlement to compensation under section 1151.

In *Viegas*, which dealt with section 1151's actual causation requirement, the Federal Circuit summarized *Gardner III*, stating that the Supreme Court both "unanimously rejected the government's efforts to impose limitations on the scope of section 1151 beyond those specifically dictated by Congress," *id*. at 1379, and made "clear that if there is any ambiguity regarding the prerequisites for compensation under section 1151, 'interpretative doubt [must be] resolved in the veteran's favor,'" *id*. at 1380 (quoting *Gardner III*, 513 U.S. at 118 (alteration by Federal Circuit)). We find this counsel apt, particularly the caution not to impose requirements that Congress did not see fit to include, and we credit that caution here.

Contrary to the Secretary's argument, our conclusion regarding the meaning of additional disability in section 1151 does not elide the additional disability requirement or open floodgates to section 1151 compensation. *See* Oral Argument at 1:04:19-1:05:40. Not every disability, complication, or side effect that stems from VA treatment necessarily will result in entitlement to section 1151 compensation because a claimant must also satisfy two causation elements to warrant section 1151 compensation: causation by VA treatment and proximate causation by VA fault or an event not reasonably foreseeable. Although caselaw has shown that the causation elements are quite nuanced, we stress today that the determination whether a veteran has demonstrated

8

additional disability under section 1151 involves a straightforward inquiry: if the veteran's condition following VA treatment results in "more" or "added" "functional impairment of earning capacity," the veteran has demonstrated additional disability for section 1151 purposes.

Our conclusion is consistent with the overall principle that a claimant satisfies the disability element of service connection "when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of the claim and that a claimant may be granted service connection even though the disability resolves prior to the Secretary's adjudication of the claim." *McLain*, 21 Vet.App. at 321 (citing *Gilpin v. West*, 155 F.3d 1353 (Fed. Cir. 1998) (interpreting section 1110); *Degmetich v. Brown*, 104 F.3d 1328 (Fed. Cir. 1997) (interpreting section 1131)). Because compensation under section 1151 is to be awarded for a disability in the same manner as if the disability were service connected, it follows that section 1151 compensation, like section 1110 compensation, is available for additional disability in existence when a claim is filed but that may resolve before the Secretary has completed adjudication.

## C. Application to Mr. Stevenson's Case

We turn to the Board decision denying Mr. Stevenson section 1151 benefits. Board factual determinations regarding entitlement to compensation under section 1151 and § 3.361 are subject to the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Roberson v. Shinseki*, 22 Vet.App. 358, 365 (2009). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When the Court determines that findings of material fact adverse to the claimant are clearly erroneous, we shall "hold unlawful and set aside or reverse such finding[s]." 38 U.S.C. § 7261(a)(4).

The Board found that Mr. Stevenson did not demonstrate additional disability. R. at 5. The Board acknowledged the veteran's competent reports of an open abdominal wound and pain in the context of establishing the presence of additional disability, R. at 8 (citing *Saunders*, 886 F.3d at 1364-65), but found those statements outweighed by the February 2019 VA examiner's finding that there was no additional disability because at the time of that examination the abdominal wound had completely healed without residuals, R. at 7-8.

We conclude that, in determining whether there was additional disability, the Board clearly erred because it did not assess Mr. Stevenson's condition after the RF ablation procedure and failed

9

to consider his open abdominal wound, pain, discharge, and discomfort as demonstrating additional disability under section 1151 during the pendency of his claim. Mr. Stevenson filed his section 1151 claim in September 2014, when the abdominal wound was open and he was experiencing symptoms. Although it is undisputed that following RF ablation he developed wound dehiscence and a MRSA infection, the Board premised its determination regarding no additional disability on the absence of an open symptomatic wound during a VA examination conducted over 4 years after the section 1151 claim was filed and the wound had closed. But because Mr. Stevenson's section 1151 claim is based on an allegation of additional disability that occurred as a result of the RF ablation procedure, § 3.361(b) requires VA to assess the veteran's condition following the RF ablation, the medical or surgical procedure "upon which the claim is based," including his diagnosed wound dehiscence and MRSA infection. *See* R. at 9227 (noting linkage between wound dehiscence and MRSA and the RF ablation procedure). Thus, the Board failed to properly compare the before and after periods relevant to Mr. Stevenson's claim as required by § 3.361(b).

The Secretary argues that VA's treatment to resolve the dehiscence and MRSA infection should be considered part of the RF ablation procedure itself and thus argues that Mr. Stevenson has not demonstrated additional disability. In making this argument, the Secretary relies on nursing records from the day of the RF ablation that indicated that the procedure was completed without complication and that Mr. Stevenson refused "w/c," which the Secretary claims refers to "wound care." Oral argument at 21:19-21:39; 58:20-59:14. The Secretary proffers that the mention of "w/c" in RF ablation procedure records means that wound care was part of the RF ablation procedure— and that proper application of § 3.361(b) in Mr. Stevenson's case requires comparing his condition before RF ablation to his condition after the wound care that was part of the ablation procedure. He argues that, because Mr. Stevenson's condition was the same before RF ablation and after wound care, the veteran failed to demonstrate additional disability. Oral Argument at 21:19-21:59; 24:41-25:11; 58:20-59:14. We reject the Secretary's argument for several reasons.

First, the Secretary's rationale is not found in the Board decision. The Board's finding of no additional disability is premised entirely on the fact that the wound had healed by the time the veteran was examined in 2019—the Board did not indicate that it considered the dehiscence, MRSA, wound care, and MRSA treatment as part of the RF ablation procedure. *See In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("'[C]ourts may not accept appellate counsel's post hoc

rationalizations for agency action.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))); *Evans v. Shinseki*, 25 Vet.App. 7, 16 (2011) ("[I]t is the Board that is required to provide a complete statement of reasons or bases, and the Secretary cannot make up for its failure to do so.").

Second, the Secretary's argument is inconsistent with his concession during oral argument that, had Mr. Stevenson been examined while the wound was open and MRSA infection present, the veteran would have demonstrated additional disability for section 1151 purposes. *See* Oral Argument at 56:30-57:24; 1:02:18-1:02:43.

Additionally, the Court notes that *Dorland's Dictionary of Medical Acronyms and Abbreviations* provides two definitions of "w/c": wheelchair and water closet. DORLAND'S DICTIONARY OF MEDICAL ACRONYMS AND ABBREVIATIONS 457 (7th ed. 2016). Even were a reputable medical reference to define "w/c" as wound care as the Secretary asserts, the nursing record, which relates to the veteran's outpatient hospital discharge after completion of RF ablation, contains no indication of a wound such that wound care would have otherwise been provided but for the veteran's refusal. Thus, although the Court does not here determine the meaning of "w/c" in Mr. Stevenson's medical record, we do not find persuasive the Secretary's assertion that it referred to wound care.

Ultimately, the Board employed the incorrect temporal focus in assessing whether Mr. Stevenson demonstrated additional disability and premised its decision on an understanding that evaluating for the presence of additional disability for purposes of section 1151 is distinct from evaluating for the presence of disability for purposes of section 1110. Because the Court holds that the Board's analysis was flawed as a matter of law, the March 2020 Board decision will be set aside.

As to the appropriate remedy, *see* 38 U.S.C. § 7261(a)(4), the course of events following the RF ablation procedure is not in dispute: Mr. Stevenson developed a MRSA infection and dehiscence of a portion of the cholecystectomy incision, resulting in a painful open abdominal wound. R. at 7, 7220-21; *see* Secretary's Br. at 3 (citing R. at 9150, 9216-17, 9227-28, 9247-48, 9252). It is also undisputed that Mr. Stevenson filed his section 1151 claim in September 2014 while the wound was open. Secretary's Br. at 2 (citing R. at 9402). The Board found Mr. Stevenson competent to report the open abdominal wound, pain, discharge, and discomfort and competent to opine that such pain constituted an additional disability. R. at 8 (citing *Saunders*, 886 F.3d at 1364-

11

65). The Board then explicitly weighed the veteran's statements against the February 2019 VA examiner's opinion to conclude that Mr. Stevenson did not demonstrate additional disability. *Id.* In weighing the evidence, the Board relied on the February 2019 VA opinion that, post RF ablation, appellant suffered "swelling" and required "triple antibiotic ointment and wound dressing changes." R. at 7. But the Board's weighing of evidence was flawed because it, like the VA examiner, focused on whether Mr. Stevenson demonstrated additional disability during the precise time of his 2019 examination—in contravention of the language of section 1151 and the directive of § 3.361(b). As noted, the Secretary acknowledges that, had Mr. Stevenson been examined while his wound was open, he would have demonstrated additional disability pursuant to section 1151. *See* Oral Argument at 1:02:18-1:02:43.[9]

The Board performed necessary fact-finding and explicitly weighed the available evidence. Significantly, the Board, based on the February 2019 VA examination, found that Mr. Stevenson required treatment as a result of his RF ablation and that, post RF ablation, the veteran had a wound that later healed. That fact-finding, together with the Secretary's oral argument concession, provides grounds to reverse the Board's finding that Mr. Stevenson does not have additional disability for section 1151 purposes. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) ("[W]here the Board has performed the necessary fact-finding and explicitly weighed the evidence, the Court of Appeals for Veterans Claims should reverse when, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." (citing *U.S. Gypsum*, 333 U.S. at 395)). Because the Court, after a review of the record, is left with the definite and firm conviction that the Board committed a mistake in concluding that Mr. Stevenson did not demonstrate additional disability, reversal is appropriate. *See id.* Thus, the Court will reverse the Board's adverse finding that Mr. Stevenson did not demonstrate additional disability for section 1151 purposes as clearly erroneous. *See Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) ("[R]eversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision."). To be clear, because it is undisputed that Mr. Stevenson demonstrated additional disability during the pendency of his section 1151 claim, we reverse the Board's adverse finding on the threshold question of whether additional disability has been shown. The Court

---

[9] Although Mr. Stevenson in his briefs argued for remand based on reasons-or-bases error, Appellant's Br. at 8, Reply Br. at 1, he contended during argument that using the correct temporal focus he demonstrated additional disability, Oral Argument at 1:08:34-1:12:53; *see id.* at 1:12:56-1:14:20 (stating that he was seeking either an order based on reasons-or-bases error or an order stating that he has demonstrated additional disability).

expresses no opinion concerning the severity and duration of the additional disability, issues that may be relevant should compensation under section 1151 ultimately be granted, nor do we address issues relevant to the causation requirements of section 1151, issues not fully addressed by the Board in the decision on appeal.

Because the Board's ultimate decision hinged on Mr. Stevenson not having demonstrated additional disability under section 1151, we remand the matter for readjudication consistent with this decision. The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

After considering the parties' briefs, oral argument, the record on appeal, and the governing law, the March 25, 2020, Board decision is SET ASIDE, the Board's determination that Mr. Stevenson did not demonstrate additional disability is REVERSED, and the matter is REMANDED for further proceedings consistent with this decision.